# EXHIBIT A

ADA COUNTY DISTRICT COURT
# CASE SUMMARY
## CASE NO. CV01-21-16917

|  |  |
|---|---|
| § | Location: **Ada County District Court** |
| § | Judicial Officer: **Barton, Peter G** |
| § | Filed on: **10/27/2021** |
| § |  |

---

### CASE INFORMATION

| | |
|---|---|
| Case Type: | **AA- All Initial District Court Filings (Not E, F, and H1)** |
| Case Status: | **10/27/2021   Active - Pending** |

---

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**

| | |
|---|---|
| Case Number | CV01-21-16917 |
| Court | Ada County District Court |
| Date Assigned | 10/27/2021 |
| Judicial Officer | Barton, Peter G |

---

### PARTY INFORMATION

| | | *Lead Attorneys* |
|---|---|---|
| **Plaintiff** | Schnuerle, Rolina | **Williams, Max Thomas** *Retained* 208-269-1835(W) |
| **Defendant** | **Carrington College, Inc.** Removed: 02/08/2022 Court Order | |
| | **San Joaquin Valley College, Inc.** | |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 10/27/2021 | New Case - District Civil | |
| 10/27/2021 | 🔳 Civil Case Information Sheet | |
| 10/27/2021 | 🔳 Complaint Filed | |
| 10/27/2021 | 🔳 Summons Issued & *Filed* | |
| 10/27/2021 | **Summons** San Joaquin Valley College, Inc. Unserved | |
| 02/05/2022 | 🔳 Amended Complaint Filed | |

---

| DATE | FINANCIAL INFORMATION | |
|---|---|---|
| | **Plaintiff** Schnuerle, Rolina | |
| | Total Charges | 221.00 |
| | Total Payments and Credits | 221.00 |
| | **Balance Due as of 02/11/2022** | 0.00 |

*Printed on 02/11/2022 at 2:40 PM*

ADA COUNTY DISTRICT COURT
# CASE SUMMARY
CASE NO. CV01-21-16917

*Printed on 02/11/2022 at 2:40 PM*

Electronically Filed
10/27/2021 4:58 PM
Fourth Judicial District, Ada County
Phil McGrane, Clerk of the Court
By: Amy King, Deputy Clerk

Max T. Williams, ISB #11015
Jack N. Wagner, ISB #11244
WILLIAMS LAW GROUP, PLLC
202 N. 9th Street
Suite 204
Boise, ID 83702
Telephone: (208) 457-7284
Facsimile: (208) 261-4907
max@williamslawgroupboise.com
jack@williamslawgroupboise.com

Barton, Peter G

*Attorneys for Plaintiff Rolina Schnuerle*

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE
## STATE OF IDAHO IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| ROLINA SCHNUERLE,<br><br>Plaintiff,<br><br>vs.<br><br>CARRINGTON COLLEGE, INC., an Idaho Corporation,<br><br>Defendant. | Case No.    CV01-21-16917<br><br><br>**SUMMONS** |

**NOTICE:** YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF. THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 21 DAYS. READ THE INFORMATION BELOW.

**TO: CARRINGTON COLLEGE, INC.**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above designated court within 21 days after service of this Summons on you. If you fail to so respond the Court may enter judgment against you as demanded by the Petitioner in the accompanying Complaint.

A copy of the Complaint is served with this Summons. If you wish to seek the advice or representation by an attorney in this matter, you should do so promptly so that your written

SUMMONS                                                                 Page 1 of 2

response, if any, may be filed in time and other legal rights protected. A letter to the judge is not an appropriate response.

An appropriate written response requires:

1. The title and number of this case.

2. Your response to the Complaint must contain admissions or denials of the separate allegations and other defenses which you may claim.

3. Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4. Proof of mailing or deliver of a copy of your response to Plaintiff's attorney, Jack Nicholas Wagner, given the contact information above.

5. Your Answer must be filed with the Ada County Courthouse, 200 W. Front Street, Boise, Idaho 83702. (208) 287-6900.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

PHIL MCGRANE

**DATED:**       10/27/2021 4:58 PM

DEPUTY CLERK OF THE COURT

SUMMONS

Page 2 of 2

Electronically Filed
2/5/2022 1:20 PM
Fourth Judicial District, Ada County
Phil McGrane, Clerk of the Court
By: Ella Mikkelson, Deputy Clerk

Max T. Williams, ISB #11015
Jack N. Wagner, ISB #11244
WILLIAMS LAW GROUP, PLLC
202 N. 9th Street
Suite 204
Boise, ID 83702
Telephone: (208) 457-7284
Facsimile: (208) 261-4907
max@williamslawgroupboise.com
jack@williamslawgroupboise.com

*Attorneys for Plaintiff Rolina Schnuerle*

# IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| ROLINA SCHNUERLE,<br><br>    Plaintiff,<br><br>vs.<br><br>SAN JOAQUIN VALLEY COLLEGE, INC., a California corporation,<br><br>    Defendant. | Case No. CV01-21-16917<br><br>**PLAINTIFF'S VERIFIED AMENDED COMPLAINT** |

COMES NOW, Plaintiff, Rolina Schnuerle (hereinafter "Plaintiff"), by and through her attorney of record, Max T. Williams, of Williams Law Group, PLLC, and for her Complaint against Defendant San Joaquin Valley College, Inc. (hereinafter "Defendant" or "SJVC"), for claims and causes of action of Constructive Discharge, Breach of contract, and others, and states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an Idaho individual who resides in Ada County, Idaho.

PLAINTIFF'S VERIFIED COMPLAINT - 1

2. Defendant is a California corporation, filed as a foreign entity in Idaho, with its principal place of business located at 3828 W. Caldwell Ave., Visalia, California 93277.

3. Defendant is the owner of Carrington College (hereinafter "Carrington") which is an Idaho Corporation, with its principal place of business located at 1122 North Liberty Street, Boise, Idaho 83704.

4. At all times relevant to this matter, the claims and/or causes of action occurred in Ada County, Idaho.

5. This Court has subject matter jurisdiction and personal jurisdiction over the Defendant pursuant to Idaho Code § 5-514.

6. Venue is proper in this Court pursuant to Idaho Code § 5-504.

7. The amount in controversy will exceed the jurisdictional amount of ten thousand dollars ($10,000.00).

## GENERAL ALLEGATIONS

8. In 2019, Carrington was purchased by Defendant.

9. Defendant was incorporated in the State of Idaho on May 18, 2020.

10. Defendant is a private college that offers Associate and Baccalaureate degrees in Science and Certificates of Completion in business, medical and technical career fields.

11. Carrington is a private, for-profit dental hygienist vocational college that provides in-person instruction, onsite training to dental hygienist students.

12. The average cost of tuition at Carrington is approximately $64,000.00 per year as of 2020-21. When Carrington students graduate, they often find work as dental hygienists in the Treasure Valley.

**PLAINTIFF'S VERIFIED COMPLAINT - 2**

13. Students are taught by trained and licensed dentists and dental hygienists. Carrington also provides free dental procedures to lower socioeconomic groups of people, often minorities and citizens living below the poverty line.

14. These dental procedures are performed by Carrington students while supervised by Carrington instructors.

15. All dental hygiene education and procedures are governed by the Commission on Dental Accreditation (hereinafter "CODA") and approved by the American Dental Association (hereinafter "ADA").

16. Defendant's Carrington facilities safety procedures are governed by the Occupational Safety and Health Administration of the United States Department of Labor (hereinafter "OSHA").

17. Plaintiff began working for the Carrington on January 6, 2014, as an instructor of dental hygiene.

18. Working for Carrington as a dental hygiene instructor was intended to be Plaintiff's last job and she intended to retire from Carrington.

19. As part of the Carrington Student training program, students are taught local anesthesia techniques. Anesthetic cartridges are used by students to administer local anesthesia to patients prior and during dental procedures and should never have large bubbles in the cartridges as it is an indication of possible contamination or spoilation. The general medical practice, as well as advised by several manufacturers of Lidocaine anesthetic cartridges, is to discard said cartridges.

20. Treatment plans require the signature of the patient, student, and supervisor per Carrington policy. If no treatment plan is given, it is considered a critical error that puts patient, students, and faculty safety in question.

**PLAINTIFF'S VERIFIED COMPLAINT - 3**

21. Plaintiff witnessed or was privy to at least two (2) instances of improper Lidocaine administration including:

    a.  On or about November 12, 2019, Dr. Hunt, an onsite Carrington dental instructor, observed several Lidocaine anesthetic cartridges with large bubbles, indicating potential contamination. Dr. Hunt notified Rachel Watkins ("Watkins") and recommended to Watkins that the cartridges should be discarded. Watkins ignored Dr. Hunts medical recommendation. As a result, the cartridges were used on patients.

    b.  Several weeks later, Watkins instructed Dr. Ryan, another onsite Carrington dental hygiene faculty member, to return potentially contaminated anesthetic cartridges into circulation. Watkins then instructed Dr. Ryan to have these potentially contaminated anesthetic cartridges administered on patients and to students who administered the anesthetic cartridges on each other as practice. Jason Sonne stated to Plaintiff that Dr. Ryan stated to him that he (Dr. Ryan) was extremely upset by Watkins' directive and stated he would refuse the order. Based upon the Plaintiff's belief, Dr. Ryan did not put the contaminated anesthetic cartridges into circulation. Had he done so, that would have been major violation of CODA, OSHA, and numerous federal and state health, medical, and safety laws.

22. Additionally, Plaintiff witnessed or was privy to the following:

    a.  Watkins instructed faculty to have several students "clean a few teeth" prior to the board exams, also known as WREB clinical exams. A patient participated as a patient during a WREB clinical exam performed by three (3) Carrington students.

PLAINTIFF'S VERIFIED COMPLAINT - 4

The patient developed an infection following treatment in Carrington's clinic. No treatment plan was authorized, and no antibiotics were administered to the patient by the supervising dentist, as required.

b. Watkins allowed the use of ultrasonic instrumentation on patients during a WREB clinical exam at the beginning of the COVID pandemic, and right after staff and students were allowed to return to in-person instruction at the Carrington campus. This occurred even though Watkins sent 3-4 emails to students stating they cannot use ultrasonic instrumentation during the height of the pandemic, as it would be a violation of Carrington COVID safety protocols as to aerosol production. But Watkins allowed students to use this equipment so that they would pass an upcoming WREB exam. Plaintiff was told by Jason Sonne that Watkins stated to him that she had "gotten in trouble" by management for her actions, but no apparent action or punishment was ever rendered.

c. Watkins instructed staff and students to administer local anesthesia to a patient that was a known drug addict and had admitted to taking methamphetamine in the parking lot of Carrington prior to having a procedure performed by students that day.

d. On or about October 30, 2020, Watkins failed to notify staff, students, and patients of potential mold in a classroom adjacent to the public clinic and continued to keep the clinic open while the mold remediation was being performed by persons in hazmat suits, even though one instructor became sick and vomited and other students and faculty had developed headaches. Dr. Lewis

recommended closing the afternoon clinic due to the noxious smells but was instructed by Watkins to keep the clinic open.

e.  Failure by Carrington to address improper instruction regarding asepsis protocol in the clinic by Vicki VanHoogen (a close friend of Ms. Watkins).

f.  Carrington Director Barry Brooks and Watkins instructed the Plaintiff and all staff to "just pass" a student, in spite of the fact that the student exhibited uncontrollable shaking hands when administering local anesthesia and only Vicki VanHoogen and Wanda O'Harra were allowed to observe the student's injections from that point on.

g.  On at least one occasion, staff were instructed to keep quiet about possible COVID-19 exposure and not to be tested while Ms. Watkins took a leave due to COVID-19 exposure from her husband.

h.  Student to teacher ratio violated and continues to violate CODA-Dental Hygiene Accreditation Standards, Section 3-6, by having a 10 student to 1 teacher ratio.

i.  Use of contaminated or used instruments on patients and teacher instruction to students to tell patient the contaminated instruments "may have been used on him.".

23. In August 2020, Plaintiff and several other staff members became concerned for the safety of the patients and the students, whose improper training put everyone at risk, and the persistent and intentional ignorance of Carrington Management to the ongoing health and safety issues occurring at their Boise campus.

**PLAINTIFF'S VERIFIED COMPLAINT - 6**

24. The Defendant, with notice and an opportunity to resolve these dangerous issues, failed to do anything about it. The Defendant continues to not address the dangerous and illegal conditions at its premise here in Idaho.

25. On November 9, 2020, Plaintiff gave her written resignation.

26. On November 19, 2020, Plaintiff emailed a formal letter of resignation to Helen M. Fairchild, Tara R. Miceli, Mitch Charles, and Leigh Christopherson at Carrington. In the letter, Plaintiff detailed the negligent and dangerous conduct she had witnessed at Carrington and the lack of action taken by Carrington's regime. She explained that she had no choice but to resign because she had concerns about the safety of Carrington's patients and students and the ongoing and continued damage Carrington was doing to the faculty by doing nothing to stop it and putting their careers and certifications at risk. A copy of the Resignation Letter is attached hereto and referenced as **Exhibit "A"**.

27. On January 26, 2021, Plaintiff retained the legal representation of Williams Law Group, PLLC.

28. In February 2021, Plaintiff began submitting job applications for dental hygienist work. Plaintiff was able to find part-time work as a dental hygienist but has been unable to find any full-time employment as a dental hygiene instructor due to her age and physical and emotional limitations developed while at Carrington.

29. On February 26, 2021, Plaintiff's counsel sent a demand letter Carrington and SJVC. A copy of the Demand Letter is attached hereto and referenced as **Exhibit "B"**.

30. On March 1, 2021, Carrington's corporate counsel, Mr. Robert Dominguez (hereinafter "Mr. Dominguez"), sent an email to Communication with Mr. Rodriguez at Carrington.

**PLAINTIFF'S VERIFIED COMPLAINT - 7**

31. Around April 2021, Plaintiff found a temporary job as a part time dental assistant due to her inability to find full-time work and because she began developing shaking hands due to her distress caused by Defendant. She only worked a couple days a week.

32. On April 20, 2021, Plaintiff's counsel had a telephone discussion with Defendant's counsel, John Ashby of the firm Hawley Trauxell, regarding settlement.

33. In May 2021, Mr. Ashby called Plaintiff's counsel and left a message rejecting Plaintiff's demand and ending settlement talks.

34. Around July 15, 2021, Plaintiff had to quit her job as a dental assistant, sell her home, and move to Bonner's Ferry, Idaho because she could no longer afford to live and work in the Treasure Valley.

35. On August 16, 2021, CODA began an investigation of Carrington for potential non-compliance of Standards 2-5 (regarding admissions) and 3-6 (regarding teacher:student ratio).

36. In August 2021, Plaintiff found work as a waitress at a café in Bonner's Ferry.

37. Plaintiff has been unable to find any work as a dental assistant, dental hygienist, or dental hygiene instructor comparable to her work for Defendant vis a vis Carrington.

38. Due to the Defendant's vis a vis Carrington's refusal to remediate the outstanding dangerous and illegal conditions, the Plaintiff was forced to file the present Complaint.

39. Wherefore, the Plaintiff alleges the following claims against the Defendant:

## COUNT I
### Constructive Discharge in Violation of Public Policy for Failing to Maintain Safe Work Environment

40. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

41. Plaintiff was employed by Defendant vis a vis Carrington; and

PLAINTIFF'S VERIFIED COMPLAINT - 8

42. Plaintiff was subjected to working conditions that violated public policy, in that [e.g., Plaintiff was required to work in unsafe or unhealthful conditions without appropriate protective equipment]; and

43. Defendant vis a vis Carrington intentionally created or knowingly permitted these working conditions; and

44. These working conditions were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign; and

45. Plaintiff resigned because of these working conditions; and

46. The working conditions were a substantial factor in causing Plaintiff's harm; and

47. As a direct and proximate result of Defendant's vis a vis Carrington's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

## COUNT II
### Breach of the Covenant of Good Faith and Fair Dealing

48. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

49. Plaintiff reasonably and appropriately acted in good faith by notifying Defendant vis a vis Carrington management of the public health and safety risks regarding the dental hygiene training of Carrington students, exposure of Carrington staff and students to Covid, exposure of Carrington staff to liability and revocation of licensure, and placement of patients in immediate and irreparable harm by administering anesthesia and other medicines to known drug users and without proper care and precautions when carrying out these duties; and

50. The Defendant vis a vis Carrington failed to provide a safe work environment; and

PLAINTIFF'S VERIFIED COMPLAINT - 9

51. The Defendant's vis a vis Carrington's actions violate, nullify, and significantly impaired any benefit or right of Plaintiff's employment; and

52. As a direct and proximate result of Defendant's vis a vis Carrington's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

**COUNT III**
**Unjust Enrichment**

53. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

54. Plaintiff provided a benefit to the Defendant by providing high-quality academic instruction in the field of dental hygiene for several years; and

55. Defendant accepted and appreciated the benefit of having a trained, skilled, and educated instructor of dental hygiene throughout the Defendant's Treasure Valley facilities; and

56. Defendant was unjustly enriched by the skill, labor, knowledge, and experience of the Plaintiff by perpetuating, promoting, affirming, sanctioning, and allowing a hostile work environment that encouraged improper dental training, putting Plaintiff's and other staff members' licensure at risk, placing patient lives at risk of death or great bodily injury, and failing to stop the nepotism that occurred with the hiring and promotion of unqualified staff that is related to, or close friends with, the Defendant's management; and

57. Under the circumstances, it would be unjust for the Defendant to retain the benefit of the instruction, provided by the Plaintiff, without compensating the Plaintiff for its value.

**COUNT IV**
**Negligent Infliction of Emotional Distress**

**PLAINTIFF'S VERIFIED COMPLAINT - 10**

58. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

59. The Defendant had a duty by law to protect its students and staff from unsafe working conditions and the performance of illegal acts; and

60. The Defendant breached of that duty; and

61. There is a causal connection between the Defendant's conduct and the Plaintiff's injury;

62. The Plaintiff has suffered actual loss or damage; and

63. The Plaintiff has a demonstrable physical manifestation of her emotional injury.

## COUNT V
### Vicarious Liability (Respondent Superior)

64. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

65. The Plaintiff engaged in work assigned to her by the Defendant vis a vis Carrington; and

66. The Plaintiff was serving at the behest of her "master", i.e., the Defendant; and

67. The Defendant vis a vis Carrington ordered Plaintiff to engage in illegal acts to which Plaintiff would not have otherwise performed had it not been demanded by her "master"; and

68. The acts to which the Defendant vis a vis Carrington ordered Plaintiff to engage in were so closely connected to the duties and obligations of Plaintiff, that were fairly and reasonably incidental to Plaintiff's duties, that they may be regarded as methods, even though improper, of carrying out the objective employment; and

69. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

## COUNT VI

PLAINTIFF'S VERIFIED COMPLAINT - 11

## Negligent Supervision

70. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

71. The Defendant was negligent in failing to exercise due care to protect third parties from foreseeable tortious acts of its management and employee; and

72. Defendant's negligent supervision encompasses conduct of its management that is outside the scope of employment because the tortious conduct occurred on the Defendant's premises; and

73. The Defendant's duty of care required that if it knows of an employee's dangerous propensities the Defendant must control the employee so he or she will not injure third parties; and

74. The Defendant failed to control its employees from engaging in such conduct; and

75. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rolina Schnuerle prays that the Court enter as follows:

1. Judgment against Defendant in an amount to be proven at trial; and

2. Award to Plaintiff her respective costs and attorneys' fees and costs pursuant to I.R.C.P. 54(e), and Idaho Code Sections 12-121 and 12-123, and all other applicable grounds for attorneys' fees and costs afforded by law and such other relief as it deems just and proper, and in the event of default judgment, reasonable attorneys' fees, and costs of $8,000.00.

PLAINTIFF'S VERIFIED COMPLAINT - 12

3. For pre-judgment and post-judgment interest at the highest rate permitted by law; and

4. For such other and further relief as the Court deems just and equitable. DATED this 5th day of February 2022.

WILLIAMS LAW GROUP, PLLC


/s/    Max T. Williams
Max T. Williams
*Attorney for Plaintiff Rolina Schnuerle*


    I certify under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct.


Rolina Schnuerle

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February 2022, the foregoing **PLAINTIFF'S VERIFIED COMPLAINT** was served upon the following parties by the method(s) indicated below:

John Ashby
Hawley Trauxell
877 W. Main St., Ste. 1000
Boise, Idaho 83702
Tel: (208) 344-6000
E-Mail: jashby@hawleytrauxell.com

☐ Hand Delivery
☐ U.S. Mail, postage prepaid
☐ Facsimile:
☒ E-mail
☐ I-Court ECF


/s/    Jennifer Cottle
Legal Assistant

**PLAINTIFF'S VERIFIED COMPLAINT - 14**

Wednesday, November 25, 2020 at 10:14:16 AM Mountain Standard Time

**Subject:** RE: Resignation Letter
**Date:** Thursday, November 19, 2020 at 3:29:52 PM Mountain Standard Time
**From:** Helen M. Fairchild
**To:** Schnuerle, Rolina

Is 4pm Mountain Time?  Would be my 3pm Pacific Standard Time.  I can call you then if you give me the best number.

**From:** Schnuerle, Rolina <RSchnuerle@carrington.edu>
**Sent:** Thursday, November 19, 2020 2:10 PM
**To:** Helen M. Fairchild <HFairchild@carrington.edu>
**Subject:** RE: Resignation Letter

Hi Helen, I would love to meet and discuss it with you.  I am in clinic until 8pm with a break at 4pm until 4:45 today.  Tomorrow I could talk with you after 1:30pm.  I appreciate your response.
Thank you,
Rolina

**From:** Helen M. Fairchild
**Sent:** Thursday, November 19, 2020 1:02 PM
**To:** Schnuerle, Rolina <RSchnuerle@carrington.edu>
**Subject:** RE: Resignation Letter

Thank you for sending this Rolina.  Do you have time to meet and discuss some of the concerns you have brought forward?

**From:** Schnuerle, Rolina <RSchnuerle@carrington.edu>
**Sent:** Thursday, November 19, 2020 11:10 AM
**To:** Helen M. Fairchild <HFairchild@carrington.edu>
**Cc:** Miceli, Tara R <Tara.Miceli@carrington.edu>; Charles, Mitch <mpcharles@carrington.edu>; Christopherson, Leigh <LChristopherson@carrington.edu>
**Subject:** Resignation Letter

To Carrington College and SJVC leadership, I am writing to inform you of situations and decisions made by the program director of the dental hygiene program Boise location that risk the safety of our community and negatively impact the quality of education our students pay for.  Rachel Watkins makes decisions that are damaging to our program, students and faculty and put to the community of patients we serve at risk.  I have resigned my position after seven years of the most rewarding thing I have done in my life as an instructor at the Boise campus.  Now that I am no longer in fear of being terminated, I would like to share with you what is actually happening at our campus.

Our program director Rachel Watkins, consistently disregards the safety and wellbeing of students, faculty and patients.  The following are things I have heard with my ears and seen with my eyes and I am just one of 15.  The problem is larger than this letter will describe.

- Rachel Watkins disregarded Doctor Hunts recommendation to discard Lidocaine anesthetic cartridges that had large bubbles in them.  We teach students that any anesthetic with large



WILLIAMS LAW GROUP

February 26, 2021

**EMAIL TO:** alana.schrock@embered.com and mpcharles@carrington.edu

San Joaquin Valley
c/o Carrington College
1122 N. Liberty St.
Boise, Idaho 83704

CT Corporation System
c/o San Joaquin Valley College, Inc.
921 S Orchard St
Ste. G
Boise, ID 83705

　　　*RE: Constructive Discharge of Rolina Schnuerle, Damages, and Demand for Payment*

Dear Board of Directors or to whom it may concern,

My firm, Williams Law Group, PLLC, has been retained by Ms. Rolina Schnuerle ("**Ms. Schnuerle**") regarding her resignation from Carrington College ("**Carrington**") in 2020. As detailed below, due to dangers Carrington exposed to patients, students, and staff through improper and unlawful directives, such as administering anesthesia to a known methamphetamine addict, Ms. Schnuerle's departure can be viewed as nothing other than a constructive discharge of her position and employment. Further, Carrington retaliated against Ms. Schnuerle for reporting these dangers to her immediate supervisor and to Carrington's Human Resource department. This letter serves as a demand for compensation in lieu of further legal action being taken against you. Please direct all correspondence in this matter to my office and cease all contact with Ms. Schnuerle.

Ms. Schnuerle's discharge claim against Carrington is based, in part, on Carrington's willful failure to take action against its Director of Dental Hygiene, Rachel Watkins ("**Ms. Watkins**"), for multiple flagrant incidents that put the public, Carrington's students, and its staff in physical, mental, and legal jeopardy. These failures by Carrington put Ms. Schnuerle in an impossible position between choosing her career, of which she is very passionate about, and, of paramount and utmost concern, the safety and health of the general public that utilize the free, no-cost dental work performed by Carrington students and staff.

Many of the issues detailed below were brought to the attention of Carrington's HR department by Ms. Schnuerle in August 2020. Her complaints were part of at least seven

MAX@WILLIAMSLAWGROUPBOISE.COM
208-269-1835

ATTORNEY AT LAW
MAX T. WILLIAMS
Exhibit B

202 N. 9ᵀᴴ ST.
STE. 204
BOISE, ID 83702

(7) other complaints to HR by various Carrington employees. These complaints were never addressed. Further, after Ms. Schnuerle complained to HR about the ongoing health and safety issues, Carrington retaliated against Ms. Schnuerle changed schedule (i.e., 11-8 before retaliation to 9am to 830pm) by increasing her teaching schedule so that she was not able to adequately prepare her teaching program. This had a direct impact on the students' education, experience, and ability to properly perform medical/dental procedures. The same schedule was given to students putting undue pressure and stress on both Ms. Schnuerle, other Carrington Staff, and often resulted in students being late to class. This was done so blatantly that it constitutes an adverse employment action in retaliation for Ms. Schnuerle objecting to, and complaining about, Carrington's dangerous actions to HR and upper management.[1] If that was not enough, Carrington management was saying demeaning and degrading comments about Ms. Schnuerle's skills and her ability to perform her duties. These adverse actions against Ms. Schnuerle, and the actions by Carrington detailed below, ultimately led to her resigning within a couple months of the retaliation.

On November 9, 2020, Ms. Schnuerle submitted her formal resignation to HR and Ms. Watkins.

On November 19, 2020, Ms. Schnuerle emailed her letter of resignation (**"Resignation Letter"**) to Carrington and addressed to Carrington and San Joaquin Valley College (**"SJVC"**).[2]

In the Resignation Letter, Ms. Schnuerle tediously detailed the actions and inactions taken by Carrington or SJVC regarding the improper care, supervision, and direction of Carrington's program director, Ms. Watkins. The complaints included, but are not limited to, the following:

- Ms. Watkins disregarding Dr. Hunts' recommendation to discard lidocaine anesthetic cartridges that contained large air bubbles and ordering the cartridges be circulated and administered to patients[3];
- Unsafe use of ultrasonic instrumentation on patients during a WREB clinical exam during the COVID-19 pandemic;
- Ms. Watkins instructed staff and students to administer local anesthesia to a patient that was a known drug addict and had taken methamphetamine in the parking lot of Carrington that day;[4]
- On or about October 30, 2020, Ms. Watkins failed to notify staff, students, and patients of potential mold in a classroom adjacent to the public clinic and continued to keep the clinic open while the mold remediation was being performed

---

[1] Patterson v. State Dep't of Health & Welfare, 151 Idaho 310, 318 (2011) (outlining prima facie evidence to state a claim of retaliation); *see* E.E.O.C. v. Luce, Forward, Hamilton & Scripps, 303 F.3d 994, 1005 (9th Cir. 2002) ("Protected activities include: (1) opposing an unlawful employment practice[.]").
[2] Recipients were: hfairchild@carrington.edu (Helen M. Fairchild), tara.miceli@carrington.edu (Tara R. Miceli), mpcharles@carrington.edu (Mitch P. Charles), and lchristopherson@carrington.edu (Leigh Christopherson).
[3] IV application of Lidocaine requires the removal of air bubbles before administering. See 0156234AW-QMS-Lidocaine-Assay-EN.pdf (thermofisher.com).
[4] Anesthetic Implications of Illicit Drug Use, https://pubmed.ncbi.nlm.nih.gov/10418418/. ("The health care professionals responsible for [the drug addicts'] care must have an understanding of the prevalence, the pharmacology, and medical complications of illicit drug use, including the potential interactions with anesthetic agents.").

by persons in hazmat suits;[5]
- Failure by Carrington to address improper instruction regarding asepsis protocol in the clinic by Vicki VanHoogen (a close friend of Ms. Watkins);
- Director Barry Brooks and Ms. Watkins instructed Ms. Schnuerle to "just pass" a student, ████████, in spite of the fact that ████ exhibited uncontrollable shaking hands and only Vicki VanHoogen and Wanda O'Harra were allowed to observe ████'s injections from that point on;
- Staff was instructed to keep quiet about possible COVID-19 exposure and not to be tested while Ms. Watkins took a leave due to COVID-19 exposure from her husband;
- Student to teacher ratio violated and continues to violate CODA-Dental Hygiene Accreditation Standards, Section 3-6, by having a 10 student to 1 teacher ratio;
- Use of contaminated or used instruments on patients and teacher instruction to students to tell patient the contaminated instruments "may have been used on him.".

Each of these complaints on their own would amount to an unsafe, dangerous, and severe work environment that put the health of patients at risk, as well as improperly training students and placing staff members licensures at risk of being revoked. These are serious implications by the willful and intentional misconduct of Carrington and SJVC. The fact that Carrington is putting patients' lives in serious risk, especially during a pandemic, gives rise to SJVC's liability vis-à-vis Carrington. As previously stated above, Ms. Schnuerle notified Carrington's HR department and upper management about all of the issues above, and more, yet nothing was done to ameliorate or rectify the situation. Thus, Ms. Schnuerle had no choice but to resign her position and leave. Her failure to do so would have put her career, reputation, and license in jeopardy and her concern for the health and safety of the patients made it necessary for her to leave. This is nothing short of Ms. Schnuerle's constructive discharge by Carrington and SJVC.

Constructive discharge in Idaho is straight forward. "Constructive discharge occurs when the working conditions deteriorate to the point that they become sufficiently extraordinary and egregious to the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer."[6] Under Idaho law, Ms. Schnuerle's decision to resign due to Carrington's repeated and continuous failures to prevent harm to its vulnerable patients, its decision to place profit over the proper education and training of Carrington student's, and placing its staffs' livelihood in jeopardy, is considered a formal discharge for remedial purposes.[7]

Due to Carrington's continued intentional conduct of putting patients, students, and staff in danger through illegal medical directives, improper use and handling of medical equipment, passing students who showed a clear inability to perform the work required, and retaliation against staff who complained about these unlawful practices, amongst other things, is a direct violation of Idaho public policy. Any action by an employer against

---

[5] *Dad Blames Dorm Mold for Daughter's Death From Adenovirus – Here's What an Expert Says*, Health.com, February 22, 2021, 5 Health Dangers of Mold | Health.com.
[6] Poland v. Chertoff, 494 F.3d 1174, 1185 (9th Cir. 2007); *see* Hatheway v. Bd. of Regents of the Univ. of Idaho, 155 Idaho 255, 264 (2013).
[7] Waterman v. Nationwide Mut. Ins. Co., 146 Idaho 667, 672 (2009).

Exhibit B

an employee for refusing an illegal act or performing an important public obligation is prima facie evidence of an adverse employment action in contravention of Idaho public policy.[8]

As such, this letter serves as a demand for compensation for the constructive discharge and retaliation of Ms. Schnuerle. To avoid litigation, along with the media exposure that will assuredly follow the filing of a lawsuit against you, Ms. Schnuerle demands to be compensated in the amount of Three Hundred and Fifty-Thousand dollars ($350,000.00). The amount demanded contemplates Ms. Schnuerle's tenure at Carrington and her inability to find comparable compensation in a lateral move to another position. Additionally, Ms. Schnuerle's earning capacity is grossly diminished as her age will be prohibitive in finding comparable employment. She is no longer able to obtain work as a dental hygienist and her ability to receive tenure at another institution is unlikely to impossible.

Please be aware that the amount demanded above provides a sufficient pre-litigation remedy to Ms. Schnuerle and will avoid any unnecessary legal actions being taken against Carrington and SJVC. Should this matter proceed to litigation, we assuredly expect Ms. Schnuerle's damages to increase. Now is the opportunity for you settle this matter before damages and costs of litigation become exorbitant through a protracted lawsuit. It is also likely that additional claims may arise through discovery and as more information and evidence come to light. Ms. Schnuerle reserves all rights and remedies not expressly stated herein.

Also, please be advised that there are likely more plaintiffs to come forward regarding SJVC and Carrington's continued willful disregard for the law and the health and safety of its patients, staff, and students. This will likely only add to the rising potential litigation cost for you and inevitably will bring these matters to light to prevent SJVC or Carrington from continuing to put the general public in danger. Now is the time to act to do right by Ms. Schnuerle and move towards settlement of this matter.

Finally, you are put on notice of your obligation to preserve all relevant documents, electronic data, communications, records, objects, and other material that may be used to support Ms. Schnuerle's claims. You must take immediate steps to ensure that all information, objects, and documents (including emails and electronically stored information, including without limitation all emails, communications and correspondence) are preserved and retrievable. Electronic information includes, but is not limited to, emails, word processing documents, spreadsheets, databases, calendars, networks, storage media, smart phones, laptops, personal computers, and other information storage devices. The failure to properly preserve such evidence carries particularly harsh penalties to be imposed by the courts if you are found to be in violation of this requirement, including, but not limited to, the inference that the destroyed evidence was unfavorable to you.[9]

---

[8] *See, e.g.*, Bollinger v. Fall River Rural Elec. Coop., Inc., 152 Idaho 632, 640 (2012).

[9] *See* Courtney v. Big O Tires, Inc., 139 Idaho 821, 825 (2003) (explaining the doctrine of spoilation, i.e., destruction of evidence); *see also* Bromley v. Garey, 132 Idaho 807, 812 (1999).

Exhibit B

February 26, 2021 - Page 4

Please respond to this letter via email to max@williamslawgroupboise.com or by telephone at 208-615-2590 within ten (10) days of receipt of this demand. Feel free to contact me with any questions you may have or to discuss settlement. I look forward to hearing from you.

Sincerely yours,


Max T. Williams
*Attorney for Rolina Schnuerle*

Electronically Filed
10/27/2021 4:58 PM
Fourth Judicial District, Ada County
Phil McGrane, Clerk of the Court
By: Amy King, Deputy Clerk

Max T. Williams, ISB #11015
Jack N. Wagner, ISB #11244
WILLIAMS LAW GROUP, PLLC
202 N. 9th Street
Suite 204
Boise, ID 83702
Telephone: (208) 457-7284
Facsimile: (208) 261-4907
max@williamslawgroupboise.com
jack@williamslawgroupboise.com

*Attorneys for Plaintiff Rolina Schnuerle*

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE

## STATE OF IDAHO IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| ROLINA SCHNUERLE,<br><br>        Plaintiff,<br><br>    vs.<br><br>CARRINGTON COLLEGE, INC., an Idaho Corporation,<br><br>        Defendant. | Case No.    CV01-21-16917<br><br>**PLAINTIFF'S VERIFIED COMPLAINT** |

COMES NOW, Plaintiff, Rolina Schnuerle (hereinafter "Plaintiff"), by and through her attorney of record, Max T. Williams, of Williams Law Group, PLLC, and for her Complaint against Defendant Carrington College, Inc. (hereinafter "Defendant" or "Carrington College"), for claims and causes of action of Constructive Discharge, Breach of contract, and others, and states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an Idaho individual who currently resides in Boundary County, Idaho.

**PLAINTIFF'S VERIFIED COMPLAINT - 1**

2.  Defendant is an Idaho Corporation, with its principal place of business located at 1122 North Liberty Street, Boise, Idaho 83704.

3.  At all times relevant to this matter, the claims and/or causes of action occurred in Ada County, Idaho.

4.  This Court has subject matter jurisdiction and personal jurisdiction over the Defendant pursuant to Idaho Code § 5-514.

5.  Venue is proper in this Court pursuant to Idaho Code § 5-504.

6.  The amount in controversy will exceed the jurisdictional amount of ten thousand dollars ($10,000.00).

## GENERAL ALLEGATIONS

7.  Defendant was incorporated in the State of Idaho in 1984.

8.  In 2019, Carrington was purchased by San Jose Valley College, Inc. (hereinafter "SJVC").

9.  Carrington is a private, for-profit dental hygienist vocational college that provides in-person instruction and onsite training to dental hygienist students.

10. The average cost of tuition at Carrington College is approximately $64,000.00 per year as of 2020-21. When Carrington College students graduate, they often find work as dental hygienists in the Treasure Valley.

11. Students are taught by trained and licensed dentists and dental hygienists. Carrington also provides free dental procedures to lower, socioeconomic groups of people, often minorities and citizens living below the poverty line.

12. These dental procedures are performed by Carrington students while supervised by Carrington College instructors.

PLAINTIFF'S VERIFIED COMPLAINT - 2

13. All dental hygiene education and procedures are governed by the Commission on Dental Accreditation (hereinafter "CODA") and approved by the American Dental Association (hereinafter "ADA").

14. Defendant's facilities safety procedures are governed by the Occupational Safety and Health Administration of the United States Department of Labor (hereinafter "OSHA").

15. Plaintiff began working for the Defendant Carrington on January 6, 2014, as an instructor of dental hygiene.

16. Working for Carrington as a dental hygiene instructor was intended to be Plaintiff's last job and she intended to retire from Carrington.

17. As part of the Carrington Student training program, students are taught local anesthesia techniques. Anesthetic cartridges are used by students to administer local anesthesia to patients prior and during dental procedures and should never have large bubbles in the cartridges as it is an indication of possible contamination or spoilation. The general medical practice, as well as advised by several manufacturers of Lidocaine anesthetic cartridges, is to discard said cartridges.

18. Treatment plans require the signature of the patient, student, and supervisor per Carrington policy. If no treatment plan is given, it is considered a critical error that puts patient, students, and faculty safety in question.

19. Plaintiff witnessed or was privy to at least two (2) instances of improper Lidocaine administration including:

   a. On or about November 12, 2019, Dr. Hunt, an onsite Carrington dental instructor, observed several Lidocaine anesthetic cartridges with large bubbles, indicating potential contamination. Dr. Hunt notified Rachel Watkins ("Watkins") and recommended to Watkins that the cartridges should be discarded. Watkins

PLAINTIFF'S VERIFIED COMPLAINT - 3

ignored Dr. Hunts medical recommendation. As a result, the cartridges were used on patients.

b. Several weeks later, Watkins instructed Dr. Ryan, another onsite Carrington dental hygiene faculty member, to return potentially contaminated anesthetic cartridges into circulation. Watkins then instructed Dr. Ryan to have these potentially contaminated anesthetic cartridges administered on patients and to students who administered the anesthetic cartridges on each other as practice. Jason Sonne stated to Plaintiff that Dr. Ryan stated to him that he (Dr. Ryan) was extremely upset by Watkins' directive and stated he would refuse the order. Based upon the Plaintiff's belief, Dr. Ryan did not put the contaminated anesthetic cartridges into circulation. Had he done so, that would have been major violation of CODA, OSHA, and numerous health, medical, and safety laws.

20. Additionally, Plaintiff witnessed or was privy to the following:

a. Watkins instructed faculty to have several students "clean a few teeth" prior to the board exams, also known as WREB clinical exams. A patient participated as a patient during a WREB clinical exam performed by three (3) Carrington students. The patient developed an infection following treatment in Carrington's clinic. No treatment plan was authorized, and no antibiotics were administered to the patient by the supervising dentist, as required.

b. Watkins allowed the use of ultrasonic instrumentation on patients during a WREB clinical exam at the beginning of the COVID pandemic, and right after staff and students were allowed to return to in-person instruction at the Carrington campus. This occurred even though Watkins sent 3-4 emails to students stating they cannot

PLAINTIFF'S VERIFIED COMPLAINT - 4

use ultrasonic instrumentation during the height of the pandemic, as it would be a violation of Carrington COVID safety protocols as to aerosol production. But Watkins allowed students to use this equipment so that they would pass an upcoming WREB exam. Plaintiff was told by Jason Sonne that Watkins stated to him that she had "gotten in trouble" by management for her actions, but no apparent action or punishment was ever rendered.

c.  Watkins instructed staff and students to administer local anesthesia to a patient that was a known drug addict and had taken methamphetamine in the parking lot of Carrington that day.

d.  On or about October 30, 2020, Watkins failed to notify staff, students, and patients of potential mold in a classroom adjacent to the public clinic and continued to keep the clinic open while the mold remediation was being performed by persons in hazmat suits, even though one instructor became sick and vomited and other students and faculty had developed headaches. Dr. Lewis recommended closing the afternoon clinic due to the noxious smells but was instructed by Watkins to keep the clinic open.

e.  Failure by Carrington to address improper instruction regarding asepsis protocol in the clinic by Vicki VanHoogen (a close friend of Ms. Watkins).

f.  Director Barry Brooks and Watkins instructed the Plaintiff and all staff to "just pass" a student, ███████████ in spite of the fact that ██████ exhibited uncontrollable shaking hands when administering local anesthesia and only Vicki VanHoogen and Wanda O'Harra were allowed to observe ██████ injections from that point on.

PLAINTIFF'S VERIFIED COMPLAINT - 5

g.  On at least one occasion, staff were instructed to keep quiet about possible COVID-19 exposure and not to be tested while Ms. Watkins took a leave due to COVID-19 exposure from her husband.

h.  Student to teacher ratio violated and continues to violate CODA-Dental Hygiene Accreditation Standards, Section 3-6, by having a 10 student to 1 teacher ratio.

i.  Use of contaminated or used instruments on patients and teacher instruction to students to tell patient the contaminated instruments "may have been used on him.".

21. In August 2020, Plaintiff and several other staff members became concerned for the safety of the patients and the students, whose improper training put everyone at risk, and the persistent and intentional ignorance of Carrington Management to the ongoing health and safety issues occurring at their Boise campus.

22. The Defendant, with notice and an opportunity to resolve these dangerous issues, failed to do anything about it. The Defendant continues to not address the dangerous and illegal conditions at its premise here in Idaho.

23. On November 9, 2020, Plaintiff gave her written resignation.

24. On November 19, 2020, Plaintiff emailed a formal letter of resignation to Helen M. Fairchild, Tara R. Miceli, Mitch Charles, and Leigh Christopherson at Carrington. In the letter, Plaintiff detailed the negligent and dangerous conduct she had witnessed at Carrington and the lack of action taken by Carrington's regime. She explained that she had no choice but to resign because she had concerns about the safety of Carrington's patients and students and the ongoing and continued damage Carrington was doing to the faculty by doing nothing to stop it. A copy of the Resignation Letter is attached hereto and referenced as **Exhibit "A"**.

**PLAINTIFF'S VERIFIED COMPLAINT - 6**

25. On January 26, 2021, Plaintiff retained the legal representation of Williams Law Group, PLLC.

26. In February 2021, Plaintiff began submitting job applications for dental hygienist work.

27. On February 26, 2021, Plaintiff's counsel sent a demand letter Carrington and SJVC. A copy of the Demand Letter is attached hereto and referenced as **Exhibit "B"**.

28. On March 1, 2021, Carrington's corporate counsel, Mr. Robert Dominguez (hereinafter "Mr. Dominguez"), sent an email to Communication with R.Rodriguez at Carrington.

29. Around April 2021, Plaintiff found a temporary job as a part time dental assistant due to her inability to find full-time work and because she began developing shaking hands due to her distress caused by Defendant. She only worked a couple days a week.

30. On April 20, 2021, Plaintiff's counsel had a telephone discussion with Defendant's counsel, John Ashby of the firm Hawley Trauxell, regarding settlement.

31. In May 2021, Mr. Ashby called Plaintiff's counsel and left a message rejecting Plaintiff's demand and ending settlement talks.

32. Around July 15, 2021, Plaintiff had to quit her job as a dental assistant, sell her home, and move to Bonner's Ferry, Idaho because she could no longer afford to live and work in the Treasure Valley.

33. On August 16, 2021, CODA began an investigation of the Defendant for potential non-compliance of Standards 2-5 (regarding admissions) and 3-6 (regarding teacher:student ratio).

34. In August 2021, Plaintiff found work as a waitress at a café in Bonner's Ferry.

35. Plaintiff has been unable to find any work as a dental assistant, dental hygienist, or dental hygiene instructor comparable to her work for Defendant.

**PLAINTIFF'S VERIFIED COMPLAINT - 7**

36. Due to the Defendant's refusal to remediate the outstanding dangerous and illegal conditions, the Plaintiff was forced to file the present Complaint.

37. Wherefore, the Plaintiff alleges the following claims against the Defendant:

## COUNT I
### Constructive Discharge in Violation of Public Policy for Failing to Maintain Safe Work Environment

38. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

39. Plaintiff was employed by Defendant; and

40. Plaintiff was subjected to working conditions that violated public policy, in that [e.g., Plaintiff was required to work in unsafe or unhealthful conditions without appropriate protective equipment]; and

41. Defendant intentionally created or knowingly permitted these working conditions; and

42. These working conditions were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign; and

43. Plaintiff resigned because of these working conditions; and

44. The working conditions were a substantial factor in causing Plaintiff's harm; and

45. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

## COUNT II
### Breach of the Covenant of Good Faith and Fair Dealing

46. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

**PLAINTIFF'S VERIFIED COMPLAINT - 8**

47. Plaintiff reasonably and appropriately acted in good faith by notifying Carrington management of the public health and safety risks regarding the dental hygiene training of Carrington students, exposure of Carrington staff and students to Covid, exposure of Carrington staff to liability and revocation of licensure, and placement of patients in immediate and irreparable harm by administering anesthesia and other medicines to known drug users and without proper care and precautions when carrying out these duties; and

48. The Defendant failed to provide a safe work environment; and

49. The Defendant's actions violate, nullify, and significantly impaired any benefit or right of Plaintiff's employment; and

50. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

## COUNT III
## Unjust Enrichment

51. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

52. Plaintiff provided a benefit to the Defendant by providing high-quality academic instruction in the field of dental hygiene for several years; and

53. Defendant accepted and appreciated the benefit of having a trained, skilled, and educated instructor of dental hygiene throughout the Defendant's Treasure Valley facilities; and

54. Defendant was unjustly enriched by the skill, labor, knowledge, and experience of the Plaintiff by perpetuating, promoting, affirming, sanctioning, and allowing a hostile work environment that encouraged improper dental training, putting Plaintiff's and other staff members' licensure at risk, placing patient lives at risk of death or great bodily injury, and failing

PLAINTIFF'S VERIFIED COMPLAINT - 9

to stop the nepotism that occurred with the hiring and promotion of unqualified staff that is related to, or close friends with, the Defendant's management; and

55. Under the circumstances, it would be unjust for the Defendant to retain the benefit of the instruction, provided by the Plaintiff, without compensating the Plaintiff for its value.

## COUNT IV
### Negligent Infliction of Emotional Distress

56. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

57. The Defendant had a duty by law to protect its students and staff from unsafe working conditions and the performance of illegal acts; and

58. The Defendant breached of that duty; and

59. There is a causal connection between the Defendant's conduct and the Plaintiff's injury;

60. The Plaintiff has suffered actual loss or damage; and

61. The Plaintiff has a demonstrable physical manifestation of her emotional injury.

## COUNT V
### Vicarious Liability (Respondent Superior)

62. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

63. The Plaintiff engaged in work assigned to her by the Defendant; and

64. The Plaintiff was serving at the behest of her "master", i.e., the Defendant; and

65. The Defendant ordered Plaintiff to engage in illegal acts to which Plaintiff would not have otherwise performed had it not been demanded by her "master"; and

66. The acts to which the Defendant ordered Plaintiff to engage in were so closely connected to the duties and obligations of Plaintiff, that were fairly and reasonably incidental to Plaintiff's

PLAINTIFF'S VERIFIED COMPLAINT - 10

duties, that they may be regarded as methods, even though improper, of carrying out the objective employment; and

67. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

**COUNT VI**
**Negligent Supervision**

68. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

69. The Defendant was negligent in failing to exercise due care to protect third parties from foreseeable tortious acts of its management and employee; and

70. Defendant's negligent supervision encompasses conduct of its management that is outside the scope of employment because the tortious conduct occurred on the Defendant's premises; and

71. The Defendant's duty of care required that if it knows of an employee's dangerous propensities the Defendant must control the employee so he or she will not injure third parties; and

72. The Defendant failed to control its employees from engaging in such conduct; and

73. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Rolina Schnuerle prays that the Court enter as follows:

**PLAINTIFF'S VERIFIED COMPLAINT - 11**

1. Judgment against Defendant in an amount to be proven at trial; and

2. Award to Plaintiff her respective costs and attorneys' fees and costs pursuant to I.R.C.P. 54(e), and Idaho Code Sections 12-121 and 12-123, and all other applicable grounds for attorneys' fees and costs afforded by law and such other relief as it deems just and proper, and in the event of default judgment, reasonable attorneys' fees, and costs of $8,000.00.

3. For pre-judgment and post-judgment interest at the highest rate permitted by law; and

4. For such other and further relief as the Court deems just and equitable.

DATED this 27th day of October 2021.

WILLIAMS LAW GROUP, PLLC

Max T. Williams
*Attorney for Plaintiff Rolina Schnuerle*

I certify under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct.

Rolina Schnuerle

**PLAINTIFF'S VERIFIED COMPLAINT - 12**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 27th day of October 2021, the foregoing **PLAINTIFF'S VERIFIED COMPLAINT** was served upon the following parties by the method(s) indicated below:

John Ashby
Hawley Trauxell
877 W. Main St., Ste. 1000
Boise, Idaho 83702
Tel: (208) 344-6000
E-Mail: jashby@hawleytrauxell.com

☐ Hand Delivery
☐ U.S. Mail, postage prepaid
☐ Facsimile:
☒ E-mail
☐ I-Court ECF

/s/  Courtney Cook
    Legal Assistant

**PLAINTIFF'S VERIFIED COMPLAINT - 13**

**Wednesday, November 25, 2020 at 10:14:16 AM Mountain Standard Time**

**Subject:** RE: Resignation Letter
**Date:** Thursday, November 19, 2020 at 3:29:52 PM Mountain Standard Time
**From:** Helen M. Fairchild
**To:** Schnuerle, Rolina

Is 4pm Mountain Time?  Would be my 3pm Pacific Standard Time.  I can call you then if you give me the best number.

**From:** Schnuerle, Rolina <RSchnuerle@carrington.edu>
**Sent:** Thursday, November 19, 2020 2:10 PM
**To:** Helen M. Fairchild <HFairchild@carrington.edu>
**Subject:** RE: Resignation Letter

Hi Helen, I would love to meet and discuss it with you.  I am in clinic until 8pm with a break at 4pm until 4:45 today.  Tomorrow I could talk with you after 1:30pm.  I appreciate your response.
Thank you,
Rolina

**From:** Helen M. Fairchild
**Sent:** Thursday, November 19, 2020 1:02 PM
**To:** Schnuerle, Rolina <RSchnuerle@carrington.edu>
**Subject:** RE: Resignation Letter

Thank you for sending this Rolina.  Do you have time to meet and discuss some of the concerns you have brought forward?

**From:** Schnuerle, Rolina <RSchnuerle@carrington.edu>
**Sent:** Thursday, November 19, 2020 11:10 AM
**To:** Helen M. Fairchild <HFairchild@carrington.edu>
**Cc:** Miceli, Tara R <Tara.Miceli@carrington.edu>; Charles, Mitch <mpcharles@carrington.edu>; Christopherson, Leigh <LChristopherson@carrington.edu>
**Subject:** Resignation Letter

To Carrington College and SJVC leadership, I am writing to inform you of situations and decisions made bythe program director of the dental hygiene program Boise location that risk the safety of our community and negatively impact the quality of education our students pay for.  Rachel Watkins makes decisions that are damaging to our program, students and faculty and put to the community of patients we serve at risk.  I have resigned my position after seven years of the most rewarding thing I have done in my life as an instructor at the Boise campus.  Now that I am no longer in fear of being terminated, I would like to share with you what is actually happening at our campus.

Our program director Rachel Watkins, consistently disregards the safety and wellbeing of students, faculty and patients.  The following are things I have heard with my ears and seen with my eyes and I am just one of 15.  The problem is larger than this letter will describe.

- Rachel Watkins disregarded Doctor Hunts recommendation to discard Lidocaine anesthetic cartridges that had large bubbles in them.  We teach students that any anesthetic with large

**EXHIBIT A001**                                                                 **Page 1 of 4**

bubbles could possibly be contaminated and they should be discarded. Rachel Watkins instructed Dr Ryan to return potentially contaminated anesthetic cartridges into circulation and be administered to patients in our clinic as well as administered to students during practice with each other (See attachment 1) Dr Ryan could confirm this event if asked.

- A patient who was treated in our clinic and participated as a patient during the WREB clinical exam by 3 of our students was in the ICU for at least 7 days after an infection occurred following care he received in our clinic. The patient did not have a signed treatment plan to receive treatment in our clinic because Rachel Watkins told faculty the students could "clean a few teeth" prior to the board exam. An antibiotic should have been prescribed for this patient by our supervising dentist but it was not.

- Rachel allowed the use of ultrasonic instrumentation for patients from our community when we returned to campus following the pandemic during a WREB clinical exam which put our patients and students at risk.

- Rachel recommended administering local anesthetic to a patient who reported using illicit drugs (methamphetamine) in the parking lot of our school even though the text book the students are required to purchase and learn from, states it is an absolute contraindication and may be life threatening if administered within 24 hours of meth use. (See attachments 2) The patient was seen on Nov 5th, 2020 by our student ███████ I defied Rachels orders and recommended to the student and the patient that her appointment be rescheduled. Dental hygiene is not an emergency and there is not justification for giving anesthetic in this circumstance. I wrote my resignation the evening this occurred.

- Rachel is reckless in her decisions and disregards the safety of our patients. On Oct 30th there were several people in hazmat suits doing what we believe, was mold remediation in the classroom adjacent to our public clinic. I was helping students who had medically compromised elderly patients and pediatric patients while this occurred. Rachel made the decision to keep the clinic open after a faculty member became ill and all others had headaches and watering eyes. Shantel Robinson and Doctor Lewis both called Rachel with concerns about the safety of everyone in the clinic and she told them it was fine to keep the clinic open. She was not on campus this day. We never received any communication about this event.

- Rachel refuses to communicate with faculty. She has hired her friend Vicki VanHoogen who has caused intense frustration and heartache for students and faculty. Vicki has been terminated at least twice from our program and was banned from our campus but Rachel has an affinity for her and hired her back. Twice. Vicki has been known to disregard asepsis protocol in our clinic and actually told one of our students to 'make up' a medication when the patient said she couldn't remember the name of the medication she was taking. She is a liability to your school. Most of the faculty has made Rachel aware of issues with Vicki in the clinical setting and they are met with retaliation, relentless exhausting schedules and a clear message that she will not tolerate any conversation on this issue. Everyone has given up and will not speak to Rachel about the egregious lack of instruction we have and continue to witness by Vicki VanHoogen. The pass rates of our students have drastically fallen as a result of inadequate instruction from an instructor who has been terminated more than once. There is more than enough evidence of this prove my words.

- Vicki does not attend faculty meetings and says she avoids them so she is not held responsible for knowing our clinic protocol.

- Rachel and Barry Brooks told us in a faculty meeting to 'just pass' our student ███████████ despite her uncontrollable shaking and risk of paresthesia of her clinical patients during oral injections. Vicki VanHoogen and Wanda O'Harra were the only instructors from that point who were allowed to watch ███████ve injections. The rest of us raised concerns about the safety of

Case 1:22-cv-00070-DCN   Document 1   Filed 02/18/22   Page 47 of 57

her patients so we were not allowed to grade ████████on injections.  ████████was dismissed by a dentist in private practice once she received her license.

- Rachel took time away to quarantine during COVID after her husband's coworker tested positive and she asked instructors to keep quiet about possible exposures  and not be tested so they could return to work the week after her quarantine.
- Rachel allowed a 10:1 ratio in clinic during a 4 hour clinic on a Friday Morning.  This ratio is not accepted by CODA and puts the public at risk.  Students need instruction and also supervision while they provide treatment in our clinic. (see attachment 3)
- Contaminated instruments were used on a patient during a mock practice exam due to the negligence of Vicki VanHoogen.  Rachel instructed to Christy Corley to inform the patient that the instruments "may have been used on him" when in fact they had been used.  The student clinician who worked with this patient is ████████████████
- Rachel is destroying the careers of capable and caring instructors so she can move her daughter, Elisa King and Miranda Luchi into our department.  There are also signs she will hire Vicki VanHoogen's son.  Elisa and Miranda are known to steal supplies and Elisa was scheduled in many DH labs while an employee in DA, that she did not show up for.  Our students suffered because of this and it put Christy Corley in an impossible situation because she did not have the help she needed for her course but could not speak up to Rachel without retaliation. Elisa was required to sit out of our program for a term while she was a student because she bullied her classmate Ali.  Miranda is Elisa's best friend and was her classmate.  They are the epitome of mean girls who bully others.  They recently took supplies intended for our Junior and Fresh II students after our students attended a Colgate presentation during one of my courses (see attachment 4).  My name was on the order but they claim it was just a mistake.  The DA department has been ordering boxes of Septocaine anesthetic which is twice as costly as lidocaine and interesting because DA students do not give anesthetic.  Rachel hired Elisa with the intent of pushing me out so Elisa could teach my courses.  I held on as long as I could before the quality of my life outside of the toxic work environment became too much to tolerate.

This is a very short list of things I have witnessed.  I am a good teacher, I have it in my heart to teach and I know how to care for your students, talk to them, cultivated confidence and inspire them.   If you talked to our students they would tell you I prepare them for their career with passion and honesty.  If you read any of my LEO's or student reviews you will see that I have been dedicated to our students.

I realize I am a very small fish in a large pond but I think you have a big problem with Rachel in a position of power.  She is aggressive and driven by ego.  She makes sure everyone around her understands she is always correct and in control.  Anyone who raises even a mild question or concern about a decision she has made will be retaliated against.  A few people have resigned or stepped away but you have some really good people left.  It wouldn't take very long for someone to make a visit and find out who these good people are.
Barry Brooks is out of touch with students and faculty.  He has not spoken to me since he became our executive director and has never asked about Rachels leadership.  We have not had the opportunity to evaluate her in her role as our supervisor in at least three years and Doctor Brooks has never asked if we get the support we need to meet the needs of our students.  He communicates only with Rachel so any information he has about our program and faculty comes directly from her.  I doubt he will be helpful to you in this matter.

If adjustments are not made, I can reasonably predict that Shantel Robinson will be set up by

Rachel and Vicki VanHoogen and terminated so Elisa can slide into DH and take over the Pain Management course.  Student pass rates will continue decline on all exams, both national and regional, and if Christy Corley, Regina Snyder, Karrie Abernathy and Shantel Robinson are pushed out the way myself and Carrie Shirley were you will be left with a staff who is entirely self-serving and have little to no interest in the success of our students.

Sincerely,
Rolina Schnuerle


**Rolina Schnuerle**
*Dental Hygiene Instructor RDH, BS*

1122 N. Liberty St
Boise, ID 83704
**e:** rschnuerle@carrington.edu

**carrington.edu**



WILLIAMS LAW GROUP

February 26, 2021

**EMAIL TO:** alana.schrock@embered.com and mpcharles@carrington.edu

San Joaquin Valley
c/o Carrington College
1122 N. Liberty St.
Boise, Idaho 83704

CT Corporation System
c/o San Joaquin Valley College, Inc.
921 S Orchard St
Ste. G
Boise, ID 83705

 *RE: Constructive Discharge of Rolina Schnuerle, Damages, and Demand for Payment*

Dear Board of Directors or to whom it may concern,

My firm, Williams Law Group, PLLC, has been retained by Ms. Rolina Schnuerle ("**Ms. Schnuerle**") regarding her resignation from Carrington College ("**Carrington**") in 2020. As detailed below, due to dangers Carrington exposed to patients, students, and staff through improper and unlawful directives, such as administering anesthesia to a known methamphetamine addict, Ms. Schnuerle's departure can be viewed as nothing other than a constructive discharge of her position and employment. Further, Carrington retaliated against Ms. Schnuerle for reporting these dangers to her immediate supervisor and to Carrington's Human Resource department. This letter serves as a demand for compensation in lieu of further legal action being taken against you. Please direct all correspondence in this matter to my office and cease all contact with Ms. Schnuerle.

Ms. Schnuerle's discharge claim against Carrington is based, in part, on Carrington's willful failure to take action against its Director of Dental Hygiene, Rachel Watkins ("**Ms. Watkins**"), for multiple flagrant incidents that put the public, Carrington's students, and its staff in physical, mental, and legal jeopardy. These failures by Carrington put Ms. Schnuerle in an impossible position between choosing her career, of which she is very passionate about, and, of paramount and utmost concern, the safety and health of the general public that utilize the free, no-cost dental work performed by Carrington students and staff.

Many of the issues detailed below were brought to the attention of Carrington's HR department by Ms. Schnuerle in August 2020. Her complaints were part of at least seven

MAX@WILLIAMSLAWGROUPBOISE.COM
208-269-1835

ATTORNEY AT LAW
MAX T. WILLIAMS
EXHIBIT B001

202 N. 9ᵀᴴ ST.
STE. 204
BOISE, ID 83702

(7) other complaints to HR by various Carrington employees. These complaints were never addressed. Further, after Ms. Schnuerle complained to HR about the ongoing health and safety issues, Carrington retaliated against Ms. Schnuerle changed schedule (i.e., 11-8 before retaliation to 9am to 830pm) by increasing her teaching schedule so that she was not able to adequately prepare her teaching program. This had a direct impact on the students' education, experience, and ability to properly perform medical/dental procedures. The same schedule was given to students putting undue pressure and stress on both Ms. Schnuerle, other Carrington Staff, and often resulted in students being late to class. This was done so blatantly that it constitutes an adverse employment action in retaliation for Ms. Schnuerle objecting to, and complaining about, Carrington's dangerous actions to HR and upper management.[1] If that was not enough, Carrington management was saying demeaning and degrading comments about Ms. Schnuerle's skills and her ability to perform her duties. These adverse actions against Ms. Schnuerle, and the actions by Carrington detailed below, ultimately led to her resigning within a couple months of the retaliation.

On November 9, 2020, Ms. Schnuerle submitted her formal resignation to HR and Ms. Watkins.

On November 19, 2020, Ms. Schnuerle emailed her letter of resignation ("**Resignation Letter**") to Carrington and addressed to Carrington and San Joaquin Valley College ("**SJVC**").[2]

In the Resignation Letter, Ms. Schnuerle tediously detailed the actions and inactions taken by Carrington or SJVC regarding the improper care, supervision, and direction of Carrington's program director, Ms. Watkins. The complaints included, but are not limited to, the following:

- Ms. Watkins disregarding Dr. Hunts' recommendation to discard lidocaine anesthetic cartridges that contained large air bubbles and ordering the cartridges be circulated and administered to patients[3];
- Unsafe use of ultrasonic instrumentation on patients during a WREB clinical exam during the COVID-19 pandemic;
- Ms. Watkins instructed staff and students to administer local anesthesia to a patient that was a known drug addict and had taken methamphetamine in the parking lot of Carringtonthat day;[4]
- On or about October 30, 2020, Ms. Watkins failed to notify staff, students, and patients of potential mold in a classroom adjacent to the public clinic and continued to keep the clinic open while the mold remediation was being performed

---

[1] Patterson v. State Dep't of Health & Welfare, 151 Idaho 310, 318 (2011) (outlining prima facie evidence to state a claim of retaliation); see E.E.O.C. v. Luce, Forward, Hamilton & Scripps, 303 F.3d 994, 1005 (9th Cir. 2002) ("Protected activities include: (1) opposing an unlawful employment practice[.]").

[2] Recipients were: hfairchild@carrington.edu (Helen M. Fairchild), tara.miceli@carrington.edu (Tara R. Miceli), mpcharles@carrington.edu (Mitch P. Charles), and lchristopherson@carrington.edu (Leigh Christopherson).

[3] IV application of Lidocaine requires the removal of air bubbles before administering. See 0156234AW-QMS-Lidocaine-Assay-EN.pdf (thermofisher.com).

[4] Anesthetic Implications of Illicit Drug Use, https://pubmed.ncbi.nlm.nih.gov/10418418/. ("The health care professionals responsible for [the drug addicts] care must have an understanding of the prevalence, the pharmacology, and medical complications of illicit drug use, including the potential interactions with anesthetic agents.").

February 26, 2021 - Page 2

by persons in hazmat suits;[5]
- Failure by Carrington to address improper instruction regarding asepsis protocol in the clinic by Vicki VanHoogen (a close friend of Ms. Watkins);
- Director Barry Brooks and Ms. Watkins instructed Ms. Schnuerle to "just pass" a student, ████████████, in spite of the fact that ████ exhibited uncontrollable shaking hands and only Vicki VanHoogen and Wanda O'Harra were allowed to observe ████ injections from that point on;
- Staff was instructed to keep quiet about possible COVID-19 exposure and not to be tested while Ms. Watkins took a leave due to COVID-19 exposure from her husband;
- Student to teacher ratio violated and continues to violate CODA-Dental Hygiene Accreditation Standards, Section 3-6, by having a 10 student to 1 teacher ratio;
- Use of contaminated or used instruments on patients and teacher instruction to students to tell patient the contaminated instruments "may have been used on him.".

Each of these complaints on their own would amount to an unsafe, dangerous, and severe work environment that put the health of patients at risk, as well as improperly training students and placing staff members licensures at risk of being revoked. These are serious implications by the willful and intentional misconduct of Carrington and SJVC. The fact that Carrington is putting patients' lives in serious risk, especially during a pandemic, gives rise to SJVC's liability vis-à-vis Carrington. As previously stated above, Ms. Schnuerle notified Carrington's HR department and upper management about all of the issues above, and more, yet nothing was done to ameliorate or rectify the situation. Thus, Ms. Schnuerle had no choice but to resign her position and leave. Her failure to do so would have put her career, reputation, and license in jeopardy and her concern for the health and safety of the patients made it necessary for her to leave. This is nothing short of Ms. Schnuerle's constructive discharge by Carrington and SJVC.

Constructive discharge in Idaho is straight forward. "Constructive discharge occurs when the working conditions deteriorate to the point that they become sufficiently extraordinary and egregious to the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer."[6] Under Idaho law, Ms. Schnuerle's decision to resign due to Carrington's repeated and continuous failures to prevent harm to its vulnerable patients, its decision to place profit over the proper education and training of Carrington student's, and placing its staffs' livelihood in jeopardy, is considered a formal discharge for remedial purposes.[7]

Due to Carrington's continued intentional conduct of putting patients, students, and staff in danger through illegal medical directives, improper use and handling of medical equipment, passing students who showed a clear inability to perform the work required, and retaliation against staff who complained about these unlawful practices, amongst other things, is a direct violation of Idaho public policy. Any action by an employer against

---

[5] *Dad Blames Dorm Mold for Daughter's Death From Adenovirus – Here's What an Expert Says*, Health.com, February 22, 2021, 5 Health Dangers of Mold | Health.com.
[6] Poland v. Chertoff, 494 F.3d 1174, 1185 (9th Cir. 2007); *see* Hatheway v. Bd. of Regents of the Univ. of Idaho, 155 Idaho 255, 264 (2013).
[7] Waterman v. Nationwide Mut. Ins. Co., 146 Idaho 667, 672 (2009).

an employee for refusing an illegal act or performing an important public obligation is prima facie evidence of an adverse employment action in contravention of Idaho public policy.[8]

As such, this letter serves as a demand for compensation for the constructive discharge and retaliation of Ms. Schnuerle. To avoid litigation, along with the media exposure that will assuredly follow the filing of a lawsuit against you, Ms. Schnuerle demands to be compensated in the amount of Three Hundred and Fifty-Thousand dollars ($350,000.00). The amount demanded contemplates Ms. Schnuerle's tenure at Carrington and her inability to find comparable compensation in a lateral move to another position. Additionally, Ms. Schnuerle's earning capacity is grossly diminished as her age will be prohibitive in finding comparable employment. She is no longer able to obtain work as a dental hygienist and her ability to receive tenure at another institution is unlikely to impossible.

Please be aware that the amount demanded above provides a sufficient pre-litigation remedy to Ms. Schnuerle and will avoid any unnecessary legal actions being taken against Carrington and SJVC. Should this matter proceed to litigation, we assuredly expect Ms. Schnuerle's damages to increase. Now is the opportunity for you settle this matter before damages and costs of litigation become exorbitant through a protracted lawsuit. It is also likely that additional claims may arise through discovery and as more information and evidence come to light. Ms. Schnuerle reserves all rights and remedies not expressly stated herein.

Also, please be advised that there are likely more plaintiffs to come forward regarding SJVC and Carrington's continued willful disregard for the law and the health and safety of its patients, staff, and students. This will likely only add to the rising potential litigation cost for you and inevitably will bring these matters to light to prevent SJVC or Carrington from continuing to put the general public in danger. Now is the time to act to do right by Ms. Schnuerle and move towards settlement of this matter.

Finally, you are put on notice of your obligation to preserve all relevant documents, electronic data, communications, records, objects, and other material that may be used to support Ms. Schnuerle's claims. You must take immediate steps to ensure that all information, objects, and documents (including emails and electronically stored information, including without limitation all emails, communications and correspondence) are preserved and retrievable. Electronic information includes, but is not limited to, emails, word processing documents, spreadsheets, databases, calendars, networks, storage media, smart phones, laptops, personal computers, and other information storage devices. The failure to properly preserve such evidence carries particularly harsh penalties to be imposed by the courts if you are found to be in violation of this requirement, including, but not limited to, the inference that the destroyed evidence was unfavorable to you.[9]

---

[8] *See, e.g.,* Bollinger v. Fall River Rural Elec. Coop., Inc., 152 Idaho 632, 640 (2012).
[9] *See* Courtney v. Big O Tires, Inc., 139 Idaho 821, 825 (2003) (explaining the doctrine of spoilation, i.e., destruction of evidence); *see also* Bromley v. Garey, 132 Idaho 807, 812 (1999).

Please respond to this letter via email to max@williamslawgroupboise.com or by telephone at 208-615-2590 within ten (10) days of receipt of this demand. Feel free to contact me with any questions you may have or to discuss settlement. I look forward to hearing from you.

Sincerely yours,

Max T. Williams
*Attorney for Rolina Schnuerle*

# EXHIBIT B

D. John Ashby, ISB No. 7228
Taylor Barton, ISB No. 11259
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5233
Email: jashby@hawleytroxell.com
        tbarton@hawleytroxell.com

Attorneys for Defendant

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE STATE OF

IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| ROLINA SCHNUERLE,<br><br>               Plaintiff,<br><br>vs.<br><br>SAN JOAQUIN VALLEY COLLEGE, INC.,<br>a California corporation,<br><br>               Defendant. | NOTICE OF NOTICE OF REMOVAL |

TO PLAINTIFF ABOVE-NAMED AND HER COUNSEL OF RECORD; AND THE

CLERK OF THE DISTRICT COURT IN AND FOR THE COUNTY OF ADA:

PLEASE TAKE NOTICE that on February 18, 2022, the above-named Defendant caused

to be filed in the United States District Court for the District of Idaho a Notice of Removal, a

copy of which (excluding its exhibits) is attached as **Exhibit 1**.

NOTICE OF NOTICE OF REMOVAL - 1

46019.0008.14505738.1

PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446(d), the filing of

the Notice of Removal, together with the filing of this notice with this Court and the service of

the Notice of Removal and this notice on the other parties, effects the removal of this action to

federal court, and this Court may proceed no further with this action unless and until this action

is remanded.

DATED THIS 18th day of February, 2022.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By  */s/ D. John Ashby* _____
        D. John Ashby, ISB No. 7228
        Taylor J Barton, ISB No. 11259
        Attorneys for Defendant

NOTICE OF NOTICE OF REMOVAL - 2

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of February, 2022, I caused to be served a true copy of the foregoing NOTICE OF NOTICE OF REMOVAL by the method indicated below, and addressed to each of the following:

Max T. Williams
Jack N. Wagner
WILLIAMS LAW GROUP, PLLC
202 N. 9th Street, Suite 204
Boise, ID  83702

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☐ E-mail
max@williamslawgroupboise.com
jack@williamslawgroupboise.com
☐ Facsimile:  208.261.4907
☑ iCourt

*/s/ D. John Ashby*
D. John Ashby, ISB No. 7228

46019.0008.14505738.1