Max T. Williams, ISB #11015
Jack Nicholas Wagner, ISB #11244
WILLIAMS LAW GROUP, PLLC
417 S. 13th Street
Boise, ID 83702
Telephone: (208) 917-1608
Facsimile: (208) 269-3106
info@williamslawgroupboise.com

*Attorneys for Plaintiff Rolina Schnuerle*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROLINA SCHNUERLE,<br><br>        Plaintiff,<br><br>    vs.<br><br>SAN JOAQUIN VALLEY COLLEGE, INC.,<br>a California Corporation,<br><br>        Defendant. | Case No.  1:22-cv-00070-DCN<br><br>**RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT** |

Plaintiff, Rolina Schnuerle (hereinafter "Plaintiff"), by and through her attorney of record, Max T. Williams, of Williams Law Group, PLLC, does hereby submit her response to Defendant's *Motion for Summary Judgment* and moves this Court for an order denying Defendant's motion and states and alleges as follows:

## INTRODUCTION

Plaintiff, Rolina Schnuerle, ("Plaintiff") worked for Defendant as a dental hygiene instructor at Carrington College. Defendant vis-à-vis Carrington College is a private vocational school that teaches and instructs students in the field of dental hygiene. In November of 2020, Plaintiff's employment with Defendant came to an end when she submitted a letter of resignation to Carrington Human Resources. In the letter, Plaintiff detailed numerous reasons for her departure including many complaints about the program director, Rachel Watkins, and other staff

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**                    **Page 1 of 21**

members that Plaintiff felt were jeopardizing the health, safety, and professionalism of Carrington students, staff and patients. Plaintiff's resignation only happened because Plaintiff saw no steps taken by Defendant towards rectifying the unsafe conditions permeating throughout the school.

Prior to November 2020, Plaintiff had complained to Defendant that Rachel Watkins was not following Carrington policies and retaliating against her for complaining by limiting her work schedule or making her work egregiously long shifts of 12 hours or more. Plaintiff had complained to HR and Rachel Watkins because that is the hierarchy of authority Plaintiff knew to be the chain of command for her complaints.

Plaintiff felt that her complaints continually fell on deaf ears. It was in or around November 2020 that Plaintiff could no longer continue to work for Defendant and felt that she had no choice but to resign from her position. One day in November 2020, Plaintiff was instructing students in the clinic to assist and supervise the students performing oral exams on patients. With one particular student, the patient presented to Plaintiff with drug intoxication. The patient informed Plaintiff that she had taken methamphetamine in the Carrington parking lot just prior to his procedure. She was scheduled to receive an oral injection of anesthesia administered by the student. Part of Carrington's policy regarding patients is that any patient who is under the influence of methamohetamine should not have any anesthesia administered because of the high risk for complications that could result in the death of the patient. Plaintiff went to the supervising dentist who told her it was fine and to administer the anesthesia because he does it all the time at his practice. When Plaintiff approached Rachel Watkins with her concerns, Mrs. Watkins told Plaintiff that if the supervising dentist says to administer, Plaintiff should administer the injection. This went against Plaintiff's training and experience and she was not comfortable carrying out her directive to give the patient the anesthesia. Although she was

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**                    **Page 2 of 21**

told to give the injection, Plaintiff refused and sent the patient home. It was too much for Plaintiff to know Defendant didn't have mechanisms in place to prevent that sort of risk from taking place and so she submitted her letter of resignation.

Plaintiff was notified by Defendant that an investigation into her complaints would be conducted yet Plaintiff was minimally involved with the investigation and was notified that no wrongful conduct was found. Plaintiff had serious doubts of the thoroughness of the investigation because it contained contradictory statements from witnesses that Plaintiff knew to be false. The investigation appeared one sided and not intended to find any wrongdoing by Defendant or its staff.

Plaintiff attempted to negotiate a settlement of all claims with Defendant, but no agreement was ever reached. Plaintiff then felt compelled to file this lawsuit. Plaintiff's claims are not only supported by evidence as more than a scintilla, but Defendant has failed to show there is no genuine dispute of the material facts in this case. Thus, Plaintiff respectfully requests this Court deny Defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

The facts in dispute in response to *Defendant's Motion for Summary Judgment* are set forth in the accompanying *Statement of Facts in Dispute to Motion for Summary Judgment* ("SOF").

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho Rules of Civil Procedure (hereinafter "I.R.C.P.") 56(c). The movant bears the burden of proving there is no material fact in dispute precluding judgment. *Boise Mode, LLC v. Donahoe Pace & Partners Ltd.*, 154 Idaho 99,

103–04, 294 P.3d 1111, 1115–16 (2013). If the movant meets this burden, the burden shifts to the nonmovant to prove the existence of a material fact. *Id.* at 104.

Upon the burden shifting, the nonmovant "may not rest upon mere allegations in the pleadings, but must set forth by affidavit specific facts showing there is a genuine issue for trial." *Curlee v. Kootenai Cty. Fire & Rescue*, 148 Idaho 391, 394–95, 224 P.3d 458, 461–62 (2008). The nonmoving party must submit more than conclusory assertions that an issue of material fact exists to create a genuine issue. *Northwest Bec-Corp v. Home Living Serv.*, 136 Idaho 835, 839, 41 P.3d 263, 267 (2002).

The record is to be viewed in a light most favorable to the nonmovant for the purposes of summary judgment, but "a mere scintilla or only slight doubt as to the facts" will not preclude summary judgment. *AED, Inc. v. KDC Investments, LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013). If the nonmovant fails to produce a genuine issue of material fact, summary judgment shall be ordered against the nonmovant. *Quinlan v. Idaho Comm'n for Pardons and Parole*, 138 Idaho 726, 729, 69 P.3d 146, 149 (2003).

## ARGUMENT

Defendant argues that all of Plaintiff's claims should be dismissed because none "can survive summary judgment." *Def. Memo ISO of Mot. MSJ,* at pg. 4. However, Defendant incorrectly argues that Plaintiff's claims should be dismissed by applying the wrong legal analysis regarding Plaintiff's claim of constructive discharge, inaccurately utilizing deposition testimony that was non-exhaustive (and is not determinative or dispositive in favor of Defendant), and affidavits of employees whose statements are completely biased against Plaintiff and should be accorded lesser weight as a result. While Plaintiff agrees that some of her claims may be viewed as novel, all allegations in her Complaint are supported by documentary or testimonial evidence sufficient to establish each claim as plausible and strong enough to survive summary judgment.

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**                                   **Page 4 of 21**

**A. Defendant Fails to Establish That Summary Judgment Is Appropriate As To Plaintiff's Claim For Constructive Discharge In Violation Of Public Policy For Failing To Maintain A Safe Work Environment.**

Defendant argues that Count I of *Plaintiff's Verified Complaint* should be read as a claim for "wrongful termination in violation of public policy" and further contends, under Defendant's incorrect application of law as to Plaintiff's claim, that Plaintiff cannot survive summary judgment. Defendant's argument fails on both accounts.

Firstly, Plaintiff has not alleged that her termination was wrongful but rather her resignation was a result of her working conditions being so intolerable that her resignation was equivalent under the law to a constructive discharge and not an actual discharge (or termination). *See Pltfs. Ver. Compl.* at pg. 8.

Secondly, Plaintiff's claim is not narrowed to a claim for wrongful termination simply because Defendant states that its limited research on the topic indicates that no such claim for relief exists in Idaho for the Plaintiff to prevail on her actual claim of constructive discharge in violation of public policy for failing to maintain safe work environment. If that were true, all civil claims brought in Idaho would have to be based on a written law or statute. Despite Defendant's best efforts to sway this Court, it is well established that state and federal courts in Idaho are not restricted to only ruling on claims based on existing laws and are empowered to interpret the law of the jurisdiction it sits freely and in novel ways, while respecting stare decisis, persuasive caselaw, and the legislative intent. This Court has the jurisdiction and authority to determine whether Plaintiff's claims as alleged are viable to survive summary judgment and proceed to trial. Plaintiff respects the discretion of this Court to make all appropriate legal rulings as the sole trier of law.

Plaintiff has never alleged discrimination as the basis for her claim. More accurately, Plaintiff has alleged that she was retaliated against and told to carry out duties Plaintiff believed would be

illegal or unlawful, amongst other things, that created a hostile and unsafe work environment that she felt forced her to leave her position. Resigning was not something Plaintiff was intending nor happy or excited to do but did so out of fear for her own personal and professional safety along with the safety of other staff, students, and patients at Carrington College. Plaintiff had notified Carrington management, including Rachel Watkins, regarding her complaints and concerns well before her complaint letter in August 2020 or her constructive discharge in November 2020. Plaintiff even detailed numerous complaints she made prior to August 2020 in her deposition testimony, yet Defendant has chosen to omit those responses. Although she complained before August 2020, she only complained to the people she knew to be above her at Carrington and who she thought she was supposed to contact regarding her allegations. This included Rachel Watkins who is a focal point of the allegations against Defendant. But somehow Defendant argues that Plaintiff never complained before her departure from Carrington. This is contrary to any statements made by Plaintiff in her complaint or her deposition testimony. Plaintiff has maintained that she attempted to complain to the higher ups at Carrington but was met with ignorance or Carrington failed to take any corrective action prior to Plaintiff's discharge.

Looking at Plaintiff's Count I of her verified complaint, the claim is based on the allegation of Plaintiff being subjected to "working conditions that violated public policy" followed by a non-exhaustive example described as "[…] [*e.g.,* Plaintiff was required to work in unsafe or unhealthful conditions without appropriate protective equipment]; and…", *Pltfs. Ver. Compl.*, at pg 8, paragraph 40 (emphasis added). Plaintiff specifically included the "e.g." to notify the reader that this was just an example and not Plaintiff's only example to support her claim.

Plaintiff testified during her deposition that there were other examples that supported Count I such as retaliation, COVID exposure, dangerously improper instruction of students, violations of CODA regarding room size, favoritism/nepotism within the staff and management, in addition to

her final complaint regarding being told to allow a Carrington student to administer anesthesia to a patient that admitted to being high on meth right before their procedure. Plaintiff testified that there would be numerous potential health and safety risks to the patient if they had administered the anesthesia including, but not limited to, cardiac arrest and other potentially fatal heart conditions.

However, Defendant has seized on the opportunity to zero in on a single line of Count I to argue Plaintiff can't or hasn't established any evidence to support her claim. Complaints are only required to provide enough information to plausibly allege a claim or claims. A complainant is not required to detail every single piece of evidence that supports her claims in her complaint. The discovery process is the tool to evaluate the veracity of additional evidence or information to support or dispute alleged claims. With the power of discovery, Defendant elicited deposition testimony from Plaintiff that only served to affirm her allegations, not the opposite as proffered by Defendant.

Thus, Defendant makes legal arguments attacking Plaintiff's claim in Count I that are an incorrect application of the standard for proving wrongful termination in violation of public policy to Plaintiff's actual claim and spends several pages discussing how Plaintiff cannot survive summary judgment because of a claim she never alleged. While, arguably, Plaintiff's claim in Count I may be considered novel, that does not permit Defendant from taking an illogical position on a non-existent claim of wrongful termination and use that to argue Plaintiff cannot show there is a genuine dispute of a material fact and Defendant should be granted its motion to dismiss all claims. It is clear that Defendant's analysis and conclusion is misplaced. Defendant failed to address Plaintiff's actual claim of constructive discharge in violation of public policy for failing to provide safe work environment and thus this Court should deny Defendant's summary judgment motion to dismiss Count I.

**B.  Defendant Fails to Establish that Summary Judgment is Appropriate as to Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

Similar to Count I, Defendant argues that Plaintiff's claim for breach of the Covenant of Good Faith and Fair Dealing should fail because the claim lacks merit. And, similar to Count I, Defendant posits a legal argument based on facts that are wholly inapplicable to Plaintiff's claims and, again, attempts to rewrite Plaintiff's claims and testimony to fit into its misplaced argument for summary judgment.

First, Defendant argues that Plaintiff has not alleged any contractual obligation that Defendant deprived from Plaintiff. Yet, that argument is not supported by the evidence in this case because Plaintiff's claim is based on Defendant owing Plaintiff the duty to provide a safe work environment and not command Plaintiff to engage in potentially unlawful or illegal conduct that was outlined in greater detail during Plaintiff's deposition.

The covenant of good faith and fair dealing is intentionally broad because of the complex nature of employment in Idaho, in that is there is both employment contracts and at-will employment throughout the State that create contractual terms that can be violated by the employer and employee. Otherwise, at-will employees would have no remedies against their employers for discrimination, retaliation, or hostile work environments not defined by a protected class or activity and that were not based on established written employment contracts. Defendant even cites to *Hurst v. IHC Health Servs., Inc.* for the proposition that at-will employment has an implied covenant of good faith and fair dealing just as an employment contract does. The only difference is an employment contract has a fixed term of employment and causes for termination.

Secondly, and confusingly, Defendant has argued continued employment was not a benefit or right conferred on Plaintiff because she was an at-will employee, something Plaintiff has never alleged. And that any claim for violation of the covenant of good faith and fair dealing by failing to provide a safe work environment must be preempted by the Idaho Workers' Compensation Act

("IWCA"), using an inapplicable Ninth Circuit Court case, interpreting the California Workers' Compensation Act ("CWCA"), to support this argument. The IWCA is not the same statutory framework as the CWCA and is intended to cover workplace injuries and the protocols for workplace safety. Plaintiff has never alleged a workplace injury. Again, Defendant has chosen to argue claims and facts that were never alleged.

As complained, Plaintiff alleges that Defendant vis-à-vis Carrington College violated the implied covenant by failing to provide Plaintiff with a safe work environment after she notified Carrington management of the public health and safety risks regarding the dental hygiene training of Carrington students, exposure of Carrington staff and students to Covid, exposure of Carrington staff to liability and revocation of licensure, retaliation by Rachel Watkins, and placement of patients in immediate and irreparable harm by administering anesthesia and other medicines to known drug users and without proper care and precautions when carrying out these duties. *See Pltfs. Ver. Compl.* at paragraphs 47-48.

Just because Plaintiff had the ethical and moral fortitude to push back against Carrington management when she was instructed to possibly commit a crime or open herself to liability, by administering the anesthesia, does not establish that Carrington is not liable. But for Plaintiff's refusal to administer the anesthesia, the patient could have been seriously injured or died. Defendant had an implied duty to not ask Plaintiff to perform any task that could be illegal or unlawful if carried out and Plaintiff had the obligation to refuse such a request.

Defendant further argues that Plaintiff cannot support her claim for breach of the good faith and fair dealing covenant because there is no evidence of: COVID exposure to staff and students, licensure revocations, or patients that were administered anesthesia while under the influence of narcotics. This argument completely ignores the evidence and testimony submitted in the other parallel case to this one.

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**                              **Page 9 of 21**

First, staff and student COVID exposure was established in the parallel case filed by Plaintiff Jason Sonne, 1-22-CV-00062-DCN, during Mr. Sonne's deposition. Mr. Sonne had personal knowledge of staff and student exposure to COVID. This was known to multiple staff members including Plaintiff through statements made by Mr. Sonne. Although the cases were not consolidated, they are based on the same and/or similar allegations against Defendant and Defendant's counsel was well aware of Mr. Sonne's testimony before filing its motion for summary judgment and making arguments they know to be untrue. Defendant's argument is disingenuous at best.

Second, Plaintiff did not have her license revoked because she took action to try and protect herself from the likely outcome of her license revocation if she continued to abide by demands of Defendant's Carrington management to perform potentially illegal or unlawful tasks. It is incongruent to say that Plaintiff cannot establish a claim under Count II because she didn't wait until her license was revoked before complaining or feeling forced to resign to avoid any potential revocation.

Defendant also argues that Plaintiff needs to show that: (1) she was deprived of a contractual obligation to establish Count II; (2) that there needs to be caselaw to support her claim in Count II; and (3) that even if Plaintiff did show 1 and 2 above, that her claim would be preempted by the Idaho Workers' Compensation Act. Addressing each in turn, Defendant has an implied contractual obligation to protect Plaintiff from an unsafe and hostile work environment and be asked to perform tasks during the scope of her employment that would be illegal. Caselaw is supportive but a lack of caselaw is not dispositive to establish a valid claim under Count II. There is nothing in Idaho law or caselaw that affirms the requirement that Plaintiff need to show actual injury for a claim under Plaintiff's good faith and fair dealing claim. It is also unnecessary because Plaintiff has not alleged she was injured by the breach of good faith and fair dealing by Defendant. She has

alleged that Defendant owed her a duty to provide a workplace free from hostile and unsafe conditions and to not request Plaintiff perform any task that would be illegal or in violation of state law. The state law would be manslaughter at minimum in addition to the likelihood of civil liability. It is because Plaintiff refused to carry out Defendant's request to administer anesthesia to a patient on meth that no such criminal or civil action was taken. Defendant's position seems to be that Plaintiff should be required to have administered the anesthesia and the patient to die or be seriously injured for Plaintiff to have a claim. That is inapposite to the logical position that preventing a crime is equally as important as catching the criminal after committing a crime.

Defendant wishes the Court to punish Plaintiff for not only preventing herself, staff, and patients from physical harm or legal jeopardy but also for sticking to her ethical and moral compass to voice her concern and displeasure with how Defendant was training its students. Students who would be going out into the real world and performing incorrect and dangerous procedures on patients because Defendant was not addressing the subpar and dangerously inadequate quality of instruction by some instructors. All of which was brought to Defendant's attention by Plaintiff throughout the many years she worked for Defendant, up to and including to the time she eventually submitted her letter of resignation in November 2020. That is when Plaintiff finally realized that nothing was going to change no matter how much she complained to Defendant and came to a point where she felt she had no other choice but to resign. In fact, in Plaintiff's August 2020 complaint letter, she tells Defendant, "I am now afraid I will be accused of 'checking' another instructor if I say anything to Rachel about it and this has become a defeating situation." Depo Exhibit 5. And in an email communication with Defendant's investigator, Thomas Corbett, dated September 4, 2020, Plaintiff states to Mr. Corbett, "I am afraid of losing my job. Not because of my job performance but because [Rachel Watkins] is in charge. It has been this way for a long time and I only spoke up because the work environment became hostile and because I love

teaching." Depo Exhibit 6. Those emails clearly show that Plaintiff had a genuine fear that she would be fired by Rachel Watkins in retaliation for Plaintiff's complaints prior to her November 2020 resignation. Plaintiff left because she had no other choice and she has maintained that position from the onset of this case. Depo Exhibit 5 & 6.

### C.  Defendant Fails to Establish that Summary Judgment is Appropriate as to Plaintiff's Claim for Unjust Enrichment.

Plaintiff must concede that, at this time, her claim for unjust enrichment is nuanced and may not fit perfectly into the legal elements of the typical claim of unjust enrichment. This, simply, is because the benefit conferred upon Defendant arises from Plaintiff's skill, labor, knowledge and experience that would normally be provided in exchange for a salary, as Defendant has argued. However, Defendant was unjustly enriched by this already bargained for exchange when Defendant ordered Plaintiff to allow a student to inject anesthesia in the mouth of patient high on meth and failed to provide a safe work environment after being notified of many instances of highly unsafe and dangerous conduct Defendant refused to remediate or just ignored. Plaintiff's skill and labor was being unjustly exploited because the at-will employment did not include being ordered to perform a potentially illegal or unlawful task of administering anesthesia to a patient high on meth or being exposed to COVID or mold. [citation needed].

Thus, Plaintiff contends she has established sufficient evidence to support her claim because Defendant abused and exploited Plaintiff's bargained-for skills, labor, experience, and knowledge to such a degree that Defendant's continuous failure to remedy or address the safety concerns complained of by Plaintiff and other staff members amounted to Defendant modifying Plaintiff's duties without compensating Plaintiff. That shows that Defendant retained a benefit from Plaintiff without compensating Plaintiff for her valuable services. This Court should find that Defendant's argument is made without merit and deny its motion for summary judgment on Plaintiff's unjust enrichment claim.

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**                                    **Page 12 of 21**

**D.  Defendant Fails to Establish that Summary Judgment is Appropriate as to Plaintiff's Claim for Negligent Infliction of Emotional Distress.**

Defendant argues that Plaintiff has not established any legally recognized duty that could have been breached by Defendant to support Plaintiff's claim for negligent infliction of emotional distress. Additionally, Defendant contends that Plaintiff solely relies on her own resignation as definitive proof that the proximate cause of her claim was her own conduct and appears to allude to the requirement that Plaintiff must show a physical manifestation of her emotional distress through medical records and cannot rely on her own testimony. Defendant continues to suppress its own memory regarding the evidence established in this case.

To establish a claim for negligent infliction of emotional distress, the plaintiff must show there was a legally recognized duty that was breached, can be connected to the conduct of the Defendant, actual loss or damage, and a physical manifestation of the emotional distress. *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 152 Idaho 632, 634 (2012). Plaintiff has alleged that Defendant had a legal duty to provide a safe workplace, which included the duty to not have its employees perform potentially illegal or unlawful acts within their scope of employment.

For example, one of Plaintiff's duties as an instructor was to assist students during labs when students were performing oral exams where injections of anesthesia were administered to patients. Defendant has protocols for the procedures that must take place prior to administering anesthesia to a patient. One of those protocols is to verify whether the patient has taken drugs or narcotics prior to the procedure because of the dangerous potential for a fatal reaction between the drug or narcotic taken and the anesthesia administered. When a patient presented for an oral exam, the patient stated they had consumed methamphetamine in the Defendant's parking lot. Being a trained and experienced dental hygienist and instructor, Plaintiff knew that the patient's condition was not suitable for the anesthesia injection because it could cause numerous fatal health conditions such as cardiac arrest. When Plaintiff brought this to the attention of the supervising

dentist and Rachel Watkins, Plaintiff was told by both that there was no immediate danger to the patient and for the student to administer the injection. Plaintiff was told by the supervising dentist that he does it all the time with patients who had taken drugs or narcotics just prior to receiving the oral anesthesia injection. Plaintiff knew that taking such a risk would put the patient's health at risk, the student's health and safety at risk, and her own professional licensure at risk while exposing her to civil liability. Because of her training and experience, Plaintiff refused to allow the administration of the injection on the patient. Plaintiff knew what she was being asked by Defendant to do was wrong and potentially illegal or unlawful though she couldn't identify a specific law because she is not well-versed in the area of law. And the supervising dentist and Rachel Watkins were experienced enough to know that the order to administer was open to a high level of liability and risk but asked Plaintiff to do it anyway.

Plaintiff was owed a duty by Defendant to not engage in potentially illegal or unlawful activity and Defendant breached that duty by asking her to administer anesthesia to a patient on meth knowing the severe and high degree of probability that the procedure could have resulted in the patient suffering great bodily harm or death.

It is true that Plaintiff has not sought medical attention for her distress. But she has testified to her experience of suffering physical pain in her hands after the events that led to her constructive discharge. This physical manifestation of her emotional distress continued to exacerbate in the months following her departure from Carrington and resulted in her inability to maintain full-time employment as a dental hygienist working for a dentist. She simply cannot maintain steady hands and the pain in her hands prevents her from holding dental instruments or perform oral procedures for any extended period of time that would be required for a full-time position. Plaintiff can absolutely show that her emotional distress caused the physical manifestation of pain and weakness (shakiness) in her hands and that the emotional distress was caused by Defendant's breach of its

duty owed to Plaintiff to provide a safe work environment, free from being asked to engage in illegal or unlawful conduct while working within the scope of her employment with Defendant. Thus, Defendant's summary judgment motion should be denied as to Count V.

### E. Defendant Fails to Establish that Summary Judgment is Appropriate as to Plaintiff's Claim for Vicarious Liability.

Defendant contends that Plaintiff's claim for vicarious liability should be dismissed as a matter of law because Plaintiff failed to allege "any viable common law causes of action" that could be assigned to Defendant vis-à-vis Carrington College under a theory of vicarious liability. Citing another attenuated application of law, Defendant uses a non-persuasive case out of this Court's District of Idaho, *Bonner v. Alderson*, CV02-248-S-LMB, 2005 U.S. Dist. LEXIS 43434 (Sept. 22, 2005), to support its argument that Plaintiff has failed to assert any common law causes of action. However, the *Bonner* case is not similar to this case and ultimately came to a conclusion that is more supportive of Plaintiff than Defendant. In *Bonner*, this Court was presented with a dispute over whether the employee for Union Pacific at the center of the lawsuit, and eventual settlement, should be required to indemnify Union Pacific for damages paid to the plaintiff in an ancillary case (also caused by the employees conduct). *Id.* at *2. Union Pacific was seeking to have its employee indemnify and reimburse it for the damages paid to the plaintiff. *Id*. There is no correlation between the facts of the two cases.

*Bonner* involved settled claims for damages caused by Union Pacific and its employee where Union Pacific was seeking to force its employee to indemnify it from liability against the plaintiff. Here, Plaintiff is not alleging that Rachel Watkins should be personally liable and indemnify Defendant for the damage caused to Plaintiff. If Defendant wishes to seek indemnification from Mrs. Watkins, it surely can do so. But that is irrelevant to the present claims brought by Plaintiff. Plaintiff desires for Defendant to be held solely liable for the tortious acts of its employees that was carried out within the scope of their employment, and all evidence points to Defendant being

aware of Mrs. Watkins and other employees' conduct leading up to Plaintiff leaving Carrington without taking any reasonable steps to prevent the conduct from reoccurring.

Defendant's assertion that its own internal investigation concluded there was no wrongful conduct committed is unpersuasive and frankly shouldn't bare any weight in this summary judgment proceeding because Plaintiff and other witnesses can testimony to the inadequacy of the investigation. And statements presented in the investigation reports, given by employees identified by Plaintiff as having knowledge of her allegations and claims, contradict sworn testimony given by Plaintiff and another Complainant against Defendant, Jason Sonne. That creates an inherent genuine dispute as the credibility of witnesses has not been established because only Defendant has deposed the Plaintiff. Plaintiff still intends to conduct her own depositions of Defendant employees and other witnesses. Summary judgment is premature because so little evidence has been established thus far.

The final holding of *Bonner* is what makes that case loosely relevant to this analysis. In its section, "Conclusions of Law – Vicarious Liability/Respondeat Superior", the *Bonner* Court held that:

> "1. While this is not a 'cause of action' in and of itself, ***it is clear that Alderson could have recovered from Union Pacific for Bonner's wrongful conduct committed while he was working*** (such as at the regular workplace and during work-related travel) ***under the theory of vicarious liability or respondeat superior***.
>
> 2. ***This 'claim' incorporated by reference all of the necessary factual allegations for liability under the other particularized claims for which Union Pacific was liable on a respondeat superior theory; therefore, the Court treats this 'claim'***

> *merely as an extension of the other claims for which Union Pacific would*
> *have only respondeat superior liability*."

*Id*. at \*58 (emphasis added).

If this Court is to follow the holding in *Bonner*, although it is not stare decisis, to determine whether Plaintiff has established sufficient facts within her complaint and claims incorporated by reference that are sufficient to establish a "claim" of vicarious liability or respondeat superior, then this Court must find that Plaintiff has alleged facts sufficient to show Defendant would be vicariously liable for its employees "wrongful conduct committed while [they were] working." *Id*. Each claim in Plaintiff's complaint is incorporated by reference to the factual allegations and meets the *Bonner* Court's holding that Plaintiff made "all of the necessary factual allegations for liability under the other particularized claims" to survive summary judgment and ultimately establish her claims under the vicarious liability theory. *Id.*

As such, Plaintiff has established facts within her complaint that allow for the attachment of the "claim" of vicarious liability. Defendant's summary judgment motion should be dismissed.

### F. Defendant Fails to Establish that Summary Judgment is Appropriate as to Plaintiff's Claim for Negligent Supervision.

The last argument Defendant makes in favor of summary judgment states Plaintiff cannot establish a claim for negligent supervision because Plaintiff did not "identify any employees that had such 'dangerous propensities'" nor did she state any specific examples of "suffering an injury of having her personal safety at risk." *D. Memorandum in Support of MSJ*, at pg. 19. Such a position appears to intentionally leave out the numerous examples Plaintiff testified to that caused or could have caused her injury both personally and professionally. The problem with Defendant's use of Plaintiff's deposition testimony is that her answers were given in response to Defendant's counsel's narrowly tailored questions which were inherently misguided and focused on events not

alleged by Plaintiff. Defendant has even cited to Plaintiff's deposition regarding her NIED claim

to support its argument that Plaintiff cannot establish a claim for negligent supervision.

In Plaintiff's complaint, she asserts the following allegations for her claim of NIED:

"69. The Defendant was negligent in failing to exercise due care to protect third
parties from foreseeable tortious acts of its management and employee; and
70.    Defendant's negligent supervision encompasses conduct of its management
that is outside the scope of employment because the tortious conduct occurred on
the Defendant's premises; and
71.    The Defendant's duty of care required that if it knows of an employee's
dangerous propensities the Defendant must control the employee so he or she will
not injure third parties; and
72.    The Defendant failed to control its employees from engaging in such
conduct[…]".

Nowhere in Plaintiff's claim for negligent supervision does she claim any specific

incident as the grounds to support her claim. Plaintiff has plausibly alleged her causes of

action and detailed numerous examples of Rachel Watkins' dangerous propensity

including, to-wit: directing Plaintiff to administer anesthesia to a patient on meth because

the supervising dentist said to when Plaintiff had notified Mrs. Watkins about the potential

danger to the patient and, to the best of Plaintiff's knowledge of Defendant's policies and

procedures at that time, was a violation of Carrington's policy regarding administering

anesthesia to a patient intoxicated on drugs or alcohol. Plaintiff explained this to

Defendant's counsel at her deposition, yet Defendant has chosen to omit that portion of

Plaintiff's testimony.

Regardless, Defendant has failed to show that there is no genuine dispute of a material

fact concerning Plaintiff's claim for negligent supervision. On the contrary, Plaintiff has

provided sufficient evidence in her complaint and through her deposition testimony to

establish that Defendant likely failed to protect Plaintiff from the dangerous propensities

of Defendant's employees and, but for Plaintiff's impeachable resolve, those dangerous

propensities could have resulted in great bodily harm or death to Defendant's patients and

allowed such a toxic and hostile work environment to permeate into the Defendant's course curriculum.

"The movant bears the burden of proving there is no material fact in dispute precluding judgment." *Boise Mode, LLC*, 154 Idaho at 103–04. Defendant has failed to show there's no genuine dispute regarding the material facts supporting Plaintiff's negligent supervision claim. Defendant contends Plaintiff has failed to show proof that her injuries were caused by the negligent supervision of Defendant. Defendant attempts to use Plaintiff's deposition testimony as a sort of smoking gun to soundly dispose of Plaintiff's claims. But Defendant asked questions and solicited answers to its questions regarding elements of claims Plaintiff never brought (see Defendant's "wrongful termination" argument in Section IV(A), at pg. 4, in Defendant's MSJ motion), or uses a single, non-exhaustive example in her claims to show that one example is controlling when it comes to the survivability of Plaintiff's claims (see Defendant's "good faith and fair dealing" argument in Section IV(B), at pgs. 13-14, "unjust enrichment" argument in Section IV(C), at pg. 16-17, and "NIED" argument in Section IV(D), at pgs. 17-18, in Defendant's MSJ motion). Defendant's entire argument in favor of summary judgment on all claims appears to be based on its own interpretation of Plaintiff's claims and the elements it believes Plaintiff has complained about.

Reading Defendant's motion, one can only reasonably interpret it as presenting arguments against Plaintiff's claims that were never argued or presented by Plaintiff. The entirety of Plaintiff's allegations was addressed by Defendant's counsel in her deposition, yet Defendant alleges all claims must fail as a matter of law because Plaintiff's couldn't identify any injury she suffered or conduct by Defendant's employees that support her claims. Yet, upon closer inspection, Plaintiff answered Defendant's questions truthfully but the questions asked were not based on Plaintiff's allegations. This makes Defendant's

arguments in favor of summary judgment misplaced. Its motion would have far more support if Plaintiff had alleged wrongful termination or relied solely on a single example of unsafe or unhealthful working conditions to support her claims. But that is not the case with the present lawsuit. Defendant has failed to address how Plaintiff's claims fail as a matter of law because it chose to argue against claims and facts that were never alleged.

Defendant argues that Plaintiff has no right to relief because nothing bad happened and that no further incidences occurred thereafter. Plaintiff's claims extend no further than the period of her employment and her allegations solely pertain to that time period. It is irrelevant that Defendant has not had any recurrences because Plaintiff's complaint alleges actionable and liable conduct for the relevant timeframe of her employment and seeks relief for the pain and suffering, she endured, and continues to endure, as a result of what she went through at Carrington College.

Defendant has failed to establish there is no genuine dispute of material fact regarding Plaintiff's claim for negligent supervision and the Court should deny its motion.

## **CONCLUSION**

Based on the foregoing, along with the pleadings on record, the Declaration of Counsel, and the Declaration of Rolina Schnuerle, being filed concurrently herewith, Plaintiff respectfully requests that this Court deny the Defendant's *Motion for Summary Judgment*.

DATED this 3rd day of February 2023.

WILLIAMS LAW GROUP, PLLC

/s/ Max T. Williams
Max T. Williams
*Attorney for Plaintiff Rolina Schnuerle*

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**                    **Page 20 of 21**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 3rd day of February 2023, the foregoing **<u>RESPONSE TO</u>** **<u>MOTION FOR SUMMARY JUDGMENT</u>** was served upon the following parties by the method(s) indicated below:

John Ashby
Hawley Troxell
877 W. Main St., Ste. 1000
PO Box 1617
Boise, Idaho 83701
Tel: (208) 344-6000
email: jashby@hawleytroxell.com
email: tbarton@hawleytroxell.com

☐ Hand Delivery
☐ U.S. Mail, postage prepaid
☐ Facsimile:
☐ E-mail
☒ I-Court ECF

/s/ Max T. Williams
Attorney