Max T. Williams, ISB #11015
Jack Nicholas Wagner, ISB #11244
WILLIAMS LAW GROUP, PLLC
417 S. 13th Street
Boise, ID 83702
Telephone: (208) 917-1608
Facsimile: (208) 269-3106
info@williamslawgroupboise.com

*Attorneys for Plaintiff Rolina Schnuerle*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROLINA SCHNUERLE,<br><br>    Plaintiff,<br><br>vs.<br><br>SAN JOAQUIN VALLEY COLLEGE, INC.,<br>a California Corporation,<br><br>    Defendant. | Case No.  1:22-cv-00070-DCN<br><br>**STATEMENT OF DISPUTED FACTS TO MOTION FOR SUMMARY JUDGMENT** |

Plaintiff, Rolina Schnuerle (hereinafter "Plaintiff"), by and through her attorney of record, Max T. Williams, of Williams Law Group, PLLC, does hereby submit the following statement of disputed facts to Defendant's Motion for Summary Judgment.

### STATEMENT OF FACTS IN DISPUTE

1. Plaintiff does not dispute ¶1.

2. Plaintiff does not dispute ¶2.

3. Plaintiff does not dispute ¶3.

4. Plaintiff does not dispute ¶4.

5. Plaintiff does not dispute ¶5.

6. ¶6 - Plaintiff's letter cited examples of approved unsafe usage of medical equipment by Rachel Watkins, troubling behavior by Vicki Van Hoogen (hereinafter "Van Hoogen"), favoritism by Rachel Watkins (hereinafter "Watkins") towards specific employees (i.e. Van Hoogen, Wanda O'Harra (hereinafter "O'Harra"), and Elisa King (hereinafter "King")), and cited multiple concern and fears of retaliation by Watkins for complaining. *See* Schnuerle Depo. 35:10-15, 37:19-38:21, Depo. Exhibit 5.

7. ¶7 – The investigation by Corbett is biased, one-sided, and comes to the conclusion Defendant wanted. The report is devoid of any real substance. Corbett didn't interview any students or other faculty (i.e. Kari Olson-Abernathy). Corbett ultimately concluded that "Interviews with Claimant, Respondent and Witnesses did not yield any facts to support allegations." – *See* Decl. Schrock Exhibit B. However, in Corbett's own report, he writes that Regina Snyder says "it is her perception that the academic integrity of the department has eroded because of Watkins." *See* Decl. Schrock Exhibit A. Which corroborates statements made by Rolina Schnuerle to Corbett that "Watkins does not support faculty and contributes to a lower academic standard." *See* Decl. Schrock Exhibit A.

8. After being interviewed, Watkins approached Plaintiff at Carrington and stated she had reached out to HR about Plaintiff, clarifying Watkins spoke to Corbett, to ask about Plaintiff's time off for an upcoming medical procedure she was scheduled to have. *See* Schnuerle Depo. 55:9-21. Plaintiff never asked Watkins to do that, and Watkins had never done that before. *See* Schnuerle Depo. 55:20-21. There is no other reason than retaliation that Watkins would have inquired about Plaintiff's time off with Corbett because Corbett wouldn't be responsible for employee PTO as he is Defendant's Employee Relations

Consultant. *See* Schnuerle Depo. 56:6-18, 56:22-57:3, 57:6-7, Depo. Exhibit 18 (Corbett Signature Line).

9. ¶8 – Defendant opened an investigation into Plaintiff's allegations and Plaintiff was interviewed by Mr. Corbett. *See* Schnuerle Depo. 48:6-10. Plaintiff's interview addressed the allegations in her August 2020 letter and raised new allegations. *See* Schnuerle Depo. 48:16-49:6, 50:18-21. On September 4, 2020, Plaintiff emailed Mr. Corbett to follow up on the interview and to provide additional information/documents in support of her allegations. *See* Schnuerle Depo. Exhibit 6. In her email to Corbett, Plaintiff details individual incidents of retaliation by Watkins after multiple complaints by Plaintiff about Van Hoogen and Watkins including, but not limited to, making up false complaints about her instruction and pressuring students to confirm those complaints with leading questions and a sudden and drastic schedule change. *See* Schnuerle Depo. Exhibit 6. Plaintiff even stated in her email that "I am afraid of losing my job." *Id.*

10. ¶9 – Ultimately, Corbett unilaterally concluded Plaintiff's allegations were unsubstantiated. *See* Schnuerle Depo. 49:16-19, 70:10-71:13, Depo. Exhibit 10. However, Corbett never conducted a thorough investigation because he never contacted the two students that Plaintiff identified as having told her that Watkins asked them leading questions about Plaintiff and were fearful of Watkins because they needed her help to get licensed. *See* Schnuerle Depo. 65:25-66:2. *Also see,* response in paragraph 7 herein.

11. Plaintiff has no information regarding paragraph 10.

12. ¶11- It does not matter that Plaintiff did not raise all issues complained of after post-resignation because Defendant was not going to take the complaints seriously and past violations did not have to repeated for Defendant to be held liable because more discovery

**STATEMENT OF DISPUTED FACTS TO MOTION FOR SUMMARY JUDGMENT**   Page 3 of 12

is needed to fully develop the true facts of this lawsuit. Addditionally, Defendant is arguing a fact as undisputed that is not an element of any claim alleged by Plaintiff in her Amended Verified Complaint.

13. ¶12 and ¶13 - The last straw for Plaintiff that precipitated her resignation occurred on or about November 5, 2020, before the start a clinic class Plaintiff was instructing. *See* Schnuerle Depo. 76:25-77:3, 80:23-25, 81:14-15. Plaintiff was approached by a student who indicated the student's patient had used methamphetamine in the parking lot of Defendant prior to having a procedure where the student would administer an oral injection of anesthesia. *See* Schnuerle Depo. 77:6-24. Although Watkins was the assigned instructor for the student, the student came to Plaintiff instead. *See* Schnuerle Depo. 80:1-10. Plaintiff suggested to reschedule the patient but Dr. Thomas, the supervising dentist of the clinic that day, who indicated that Plaintiff should just have the student administer the injection. *See* Schnuerle Depo. 78:4-13. Plaintiff then went to Watkins and told Watkins that Dr. Thomas said to administer the injection in spite of the contraindication of meth use. *See* Schnuerle Depo. 78:14-22. Due to the high risk of stroke, Plaintiff refused Dr. Thomas and Watkins directives, rescheduled and discharged the patient. *See* Schnuerle Depo. 78:23-79:8. Plaintiff wrote her resignation letter that night. *See* Schnuerle Depo. 72:16-20; 89:8-12.

14. ¶14 - Plaintiff did not bring up the anesthesia incident in her resignation letter because she was concerned about her career being in jeopardy and facing retaliation from Watkins. *See* Schnuerle Depo. 89:16-19. Plaintiff only brought up the anesthesia incident with Watkins after she resigned because she was unable to get Defendant to fix any of the allegations from her previous letters and felt if Corbett performed a real and thorough investigation he

would be able to verify her allegations. *See* Schnuerle Depo. 91:7-25, 172:12-173:2, Depo. Exhibit 11. *Also see* response in paragraphs 8, 9, and 15 herein.

15. ¶15 – The issue is not whether Plaintiff told anyone at Carrington or Defendant that she was contemplating resigning. The issue is whether all the allegations, reported or not, created such a hostile work environment as to compel Plaintiff to leave her position. *Also see,* response in paragraphs 8, 9, and 13 herein.

16. Plaintiff does not dispute paragraph 16.

17. ¶17 – It does not matter that Plaintiff did not raise all issues complained of after post-resignation because CC was not going to take the complaints seriously and past violations did not have to repeated for Defendant to be held liable because more discovery is needed to fully develop the true facts of this lawsuit.

18. ¶18-¶20 – Plaintiff raised the issue of lidocaine bubbles in her November 19 post-resignation email. At the time, after discussing concerns with Dr. Hunt, the supervising dentist, concurred that the lidocaine cartridges should be returned. *See* Schnuerle Depo. 99:9-11. Watkins claims that she consulted textbooks and conferred with Dr. Hunt before determining the cartridges were safe to return to rotation, yet a simple search of lidocaine cartridges provides instruction on how to handle lidocaine cartridges with air bubbles. *See* Decl. of Rachel Watkins ¶4; *see* Decl. of Rolina Schnuerle Exhibit A.

19. On or about January 4, 2021, Fairchild admitted that she concurred "that the lidocaine should have been returned to the supplier and not used." *See* Decl. of Alana Schrock Exhibit B.

20. But Watkins used her own judgment to decide the cartridges were safe to return to rotation and nothing indicates that input from Dr. Hunt or any other faculty contributed to Watkins

decision, she made it on her own in spite of the clear unnecessary risks. "Rachel was confident in the decision to return them to circulation as she used cartridges of similar fashion while in practice, for many years." *See* Decl. of Alana Schrock Exhibit B.

21. Further, it would have been little to no trouble or cost to simply return the contaminated cartridges and get new ones from Terry Hipler. *See* Schnuerle Depo. Exhibit 11 (page 4).

22. Watkins admits to discussing the lidocaine cartridges with Dr. Ryan, who is not a dentist and has limited knowledge of lidocaine and what large bubbles are for. *See* Schnuerle Depo. 94:3-7. Defendant has not presented any affidavits or declarations of Dr. Hunt or Dr. Ryan, therefore a genuine dispute of a material fact exists regarding whether Watkins followed the proper procedure and if keeping the contaminated lidocaine cartridges was worth the risk to the faculty, students, and program.

23. ¶21 – At the time, all indications pointed to the patient's infection originating at the clinic after having receiving treatment from 3 students during WREB exams. The patient presented to the clinic with possible lockjaw and pain in his mouth. *See* Schnuerle Depo. 101:7-9. Defendant only learned that a treatment plan was not needed because the patient received treatment during a WREB exam which is covered by the WREB. *See* Decl. of Rachel Watkins at ¶7; *see* Decl. of Alana Schrock Exhibit B. Additionally, Watkins did not provide any documentation to support her contention that the patient did not require a signed treatment plan because WREB didn't require it if the procedure was conducted during a WREB exam. *See* Decl. of Rachel Watkins at ¶7.

24. ¶22 – Plaintiff has no information regarding ¶22.

25. ¶23 – Plaintiff does not dispute ¶23 but that fact does not support granting Defendant's summary judgment motion as it is not an element or fact alleged by Plaintiff in her Amended Verified Complaint.

26. ¶24-¶25 – As to the ultrasonic instruments, Plaintiff relied on statements by Rachel Watkins that those instruments were not to be used during WREB exams. It was like Watkins was just making it up on the fly, Watkins would have done nothing if not brought to her attention by Plaintiff. Watkins didn't even know what the policy was for Carrington and seemed to just make it up. *See* Schnuerle Depo. 38:14-40:3, Depo. Exhibit 5 and 15. This is supported further by Fairchild who stated, "Rachel did disclose this to me and I acknowledged to Rolina that the current written protocol is no aerosols. This incident occurred in July during the last WREB exam." *See* Decl. of Alana Schrock Exhibit B.

27. ¶26 – Plaintiff never refused to use ultrasonic instrumentation because they were not allowed to be used anyways prior to and after the WREB exam in July 2020.

28. ¶27-¶28 – None of Defendant's arguments prove there is a lack of genuine dispute. No evidence beyond Watkins declaration, that has no exhibits, to show communications or prove it was a water leak and not a mold outbreak. This lawsuit is not just about Watkins but Defendant as a whole allowing the school to deteriorate under its leadership by through poor management that allowed for someone like Watkins to create a dangerous, unsafe, and hostile work environment that led to the constructive discharge of Plaintiff.

29. Additionally, Plaintiff has directly contradicted all of this in her deposition testimony. *See* Schnuerle Depo. 114:18-118:12. Which is supported by Fairchild who stated, "It was not clear to me in discussion with Rolina, where the "mold" issue came up except that Rachel corroborated this when they called her. This came up in my discussion with Regina as well.

She did mention there were leaks that created mold." *See* Decl. of Alana Schrock Exhibit B.

30. ¶29-¶30 – Plaintiff had personal knowledge hearing Watkins say "just pass" the student and it was common knowledge throughout the Carrington Faculty. *See* Schnuerle Depo. 125:18-127:16. Other instructors were aware of the student's shaky hands as well. *Id.* at 127:24-128:7. And the student was almost a year away from graduating and not "near graduation" per Watkins. *See* Schnuerle Depo. 125:18-25, 129:20-130:7; *see* Decl. of Rachel Watkins ¶10.

31. There's also proof that Carrington/Brooks/Watkins were addressing the shaking prior to August 2020 that was established by Defendant who submitted a Carrington Meeting Agenda that shows the wrong timeframe for the incident Plaintiff alleges. The student would have only been a sophomore and just beginning to give injections of local anesthesia to her peers. *See* Schnuerle Depo. 129:7-130:7, Depo. Exhibit 16.

32. "Other instructors" were assigned to the student that felt the student should receive a passing grade. *See* Schnuerle Depo. 130:17-21, 131:2-3. The other instructors were Van Hoogen and O'Harra, favored friends of Watkins. *Id.*

33. Further evidence supports Plaintiff's allegation in Corbett's investigation reports submitted during Plaintiff's deposition. Fairchild states, "All instructors should be calibrated in the clinic on how to observe students in local anesthesia or any other competency. Usually the local anes. Instructor (this being Rolina) would weigh in with most input. We should assign specific instructors for observations, that is why calibration occurs. While Rolina and Regina both corroborated Barry's statement about just passing the student, I would ask

others who were in the meeting. I have no idea if he said this or not. There is probably more to this story that I was told." *See* Decl. of Alana Schrock Exhibit B.

34. And by Miceli who states, "Lindsey took and passed her WREB anesthesia Board in May of 2020. In her very last term Lindsey started shaking – this was not the case prior. Some of the instructors have noticed it. Rachel said they worked with her and Instructors[sic] did fail her on these injections. Rachel had more faculty observe and work with her. She did get it mostly under control and they did pass her. Rachel did not feel like failing her in her last three weeks was the right thing. Rachel discussed this with instructors and said that if they feel like she is dangerous, we should. Rachel admits she encouraged them to pass her if they felt like it was not dangerous." *Id.*

35. ¶31 – Plaintiff's allegations are that Defendant was negligent in supervising Watkins which allowed her to do whatever she wanted, including telling Shantel Robinson to keep quiet about possible COVID exposure. *See* Schnuerle Depo. 131:19-132:8. Defendant attempts to make Plaintiff's entire lawsuit a referendum on whether Watkins was acting appropriately, and even if she wasn't, Defendant can't be liable for Watkins actions because they were not notified through official means about the problems. That is simply not true as Plaintiff has testified in her deposition. Plaintiff received no help or support from Defendant's management or HR when she would complain.

36. ¶32 – Plaintiff was informed by Corley that contaminated instruments were used on a patient in clinic because Corley witnessed it happen. *See* Schnuerle Depo. 134:24-136:20. Changing the protocol to require students to take their instruments with them in clinic, the overall negligent supervision of Defendant over Watkins created an environment for Watkins to feel confident she could order faculty to lie about potentially life-threatening

health risks. Further, this event was confirmed to have happened by Miceli in her submission to Corbett's investigation. *See* Decl. of Alana Schrock Exhibit B.

37. There is no dispute that the contaminated instrument was put in the mouth of a patient and is another example of the negligent supervision by Defendant and that Watkins actions were continually presenting personal and professional safety for all students, faculty, and patients by promoting and failing to correct fundamental errors in instructing dental hygiene.

38. ¶33 – Plaintiff has testified that the email identified by Defendant as Exhibit 17 of Plaintiff's deposition was sent after the violation already occurred. *See* Schnuerle Depo. 134:4-14. And Defendant has submitted evidence that the ratio was not fixed and CODA found Defendant was non-compliant with the teacher:student ratio several times in 2021 and 2022. *See* Decl. of Alana Schrock Exhibit B (Miceli – "It has been determined that due to the amount of faculty, we are running over ratio (1:6).").

39. ¶34 – Defendant is applying the wrong standard to Plaintiff's claims. There is no allegations or statements made regarding any misconduct by Defendant that required contacting or whistle-blowing to a government agency. Plaintiff is not a government employee nor has an employment contract that would provide whistle-blower protection under the terms of her employment. Defendant is arguing a mountain out of a mole hill for something never alleged or proffered by Plaintiff.

40. ¶35 – As stated previously above, Defendant's contention that it completed an investigation into Plaintiff's allegations and found all claims unsubstantiated does not create an undisputed fact simply because it says its investigator was thorough. Plaintiff has testified that she did not know she was being interviewed by Fairchild during their communications

and has testified that Fairchild was unaware of a lot of Plaintiff's allegations. *See* Schnuerle Depo. 142:14-144:25.

41. ¶36 – Plaintiff denies not communicating with Corbett after her November 19, 2020, post-resignation letter because she testified that she did contact him after that date. *See* Schnuerle Depo. 143:3-13.

42. ¶37 – Plaintiff has testified to the fact that Corbett didn't do a full and complete investigation into her claims. When she spoke with Helen Fairchild, one of the deans at Carrington, on November 19, 2020, about the allegations contained in her email sent that day. *See* Schnuerle Depo. 92:1-19. In their conversation, Fairchild stated to Plaintiff that Fairchild was aware of some of Plaintiff's allegations but had not heard of others. *See* Schnuerle Depo. 92:13-19. Disputes DSOF ¶37

43. Plaintiff has no information regarding paragraph ¶38.

44. ¶39-43 – All of Defendant's arguments are irrelevant because they all address elements of a non-existent claim, wrongful termination. Plaintiff never alleged wrongful termination so ¶39-42 neither eliminate nor create a genuine dispute of material fact.

DATED this 3rd day of February 2023.

WILLIAMS LAW GROUP, PLLC

/s/ Max T. Williams
Max T. Williams
*Attorney for Plaintiff Rolina Schnuerle*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of February 2023, the foregoing **STATEMENT OF DISPUTED FACTS TO MOTION FOR SUMMARY JUDGMENT** was served upon the following parties by the method(s) indicated below:

| | |
|---|---|
| John Ashby<br>Hawley Troxell<br>877 W. Main St., Ste. 1000<br>PO Box 1617<br>Boise, Idaho 83701<br>Tel: (208) 344-6000<br>email: jashby@hawleytroxell.com<br>email: tbarton@hawleytroxell.com | ☐ Hand Delivery<br>☐ U.S. Mail, postage prepaid<br>☐ Facsimile:<br>☐ E-mail<br>☒ I-Court ECF |

/s/ Max T. Williams
Attorney